Joseph G. Adams (#018210)
Zachary G. Schroeder (#036226)
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: jgadams@swlaw.com
          zschroeder@swlaw.com

Christian J. Pistilli (*pro hac vice application forthcoming*)
Robert Newman (admitted *pro hac vice*)
Nicholas Pastan (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: 202-662-6000
E-Mail: cpistilli@cov.com
          rnewman@cov.com
          npastan@cov.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jerome M. Skrtich, Joseph F. Peck, and Michael Riccitelli on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>Pinnacle West Capital Corporation; the Benefit Administration Committee of the Pinnacle West Capital Corporation Retirement Plan, and; John/Jane Does 1-5,<br><br>          Defendants. | Civil Action No. 22-cv-01753-SMB<br><br>**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**(Oral Argument Requested)** |

1

## **INTRODUCTION**

Plaintiffs are participants in the Pinnacle West Capital Corporation Retirement Plan (the "Plan") who receive monthly retirement benefits in accordance with the written terms of the Plan, precisely as they were promised.  Yet Plaintiffs allege that their monthly benefits would be slightly higher if the Plan terms calculated benefits differently, using actuarial assumptions that the law requires for a different purpose, and that the Plan therefore violates ERISA.  Plaintiffs further allege that implementing the Plan's terms constitutes a breach of Defendants' fiduciary duties.  Plaintiffs seek to assert these claims on behalf of themselves and a class of allegedly similarly situated individuals.  Plaintiffs' claims fail on the face of the First Amended Complaint ("FAC") for several reasons.

First, Plaintiffs' statutory claims fail because they do not plausibly allege that the actuarial assumptions used by the Plan are unreasonable.  Unlike in other contexts where ERISA mandates the use of specific actuarial assumptions, the provisions relied upon by Plaintiffs are silent about the assumptions required here, permitting employers to specify actuarial assumptions in their discretion.  Moreover, because there is no one correct set of actuarial assumptions, the case law recognizes that "reasonableness is a zone, not a point."  Plaintiffs fail plausibly to allege that the Plan's assumptions fall outside that range of reasonableness.  Instead, Plaintiffs merely observe that using actuarial assumptions specified in the law for a different purpose would produce slightly greater benefits for the three Plaintiffs in this case.  That observation is insufficient to nudge Plaintiffs' claims across the line from conceivable to plausible.

Second, Plaintiff Skrtich's and Plaintiff Peck's statutory claims fail for the additional reason that they have no claim under 29 U.S.C. § 1055.  That provision requires that pension plans offer a Qualified Joint and Survivor Annuity ("QJSA") and a Qualified Optional Survivor Annuity ("QOSA") that are "actuarially equivalent" to a single life annuity.  As the FAC makes clear, the QJSA under the Plan is a joint and 50% survivor annuity; accordingly, under ERISA, the Plan's QOSA is a joint and 75%

2

survivor annuity.  Plaintiffs Skrtich and Peck, however, allege that they each are receiving a Joint and 100% Survivor Annuity.  Accordingly, neither Plaintiff is receiving a form of benefit covered by 29 U.S.C. § 1055.

Third, Plaintiffs' breach of fiduciary duty claims likewise fail.  Because Plaintiffs do not allege any ERISA violation, their entirely derivative breach of fiduciary claim likewise necessarily fails.  Moreover, even if the FAC stated a claim that the Plan's provisions violate ERISA, a breach of fiduciary duty claim must be premised on more than allegations that a plan fiduciary faithfully administered a plan provision that violates ERISA.  Since no such allegations exist here, Plaintiffs' breach of fiduciary duty claim should be dismissed.

Accordingly, Defendants Pinnacle West Capital Corporation and The Benefit Administration Committee of the Pinnacle West Capital Corporation Retirement Plan respectfully move this Court for an Order pursuant to Fed. R. Civ. P. 12(b)(6) granting Defendants' Motion to Dismiss the First Amended Class Action Complaint, dismissing the First Amended Class Action Complaint (Dkt. 17), and awarding Defendants further relief as the Court may deem just and proper.  This motion is supported by the following Memorandum of Points and Authorities.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**</u>

<u>**BACKGROUND**</u>

Plaintiffs Jerome Skrtich and Joseph Peck filed this lawsuit on October 13, 2022.  Dkt. 1.  Their complaint alleged that Defendants violated 29 U.S.C. §§ 1053(a), 1055(d)(1), and breached their fiduciary duties by failing to pay joint and survivor annuity benefits to Plaintiffs that were "actuarially equivalent" to single life annuities offered by the Plan.  *See, e.g.*, *id.* at ¶¶ 1–9.  On December 9, 2022, Plaintiffs filed the FAC.  Dkt. 17.  The FAC removed allegations that Defendants violated 29 U.S.C. § 1053(a) and added an additional plaintiff, Michael Riccitelli.  The FAC is otherwise substantially the same as the original complaint.

Plaintiffs are all participants in the Plan. FAC ¶¶ 1, 13-15. The Plan is administered by the Benefit Administration Committee of the Pinnacle West Capital Corporation Retirement Plan, which is a named fiduciary and Plan administrator. FAC ¶¶ 1, 16. The Plan offers participants benefit payments in various forms. The Plan first offers a single life annuity, or "straight life annuity," which is the default for single participants and provides monthly payments to participants from the time of retirement until their death. FAC ¶ 2. Participants may also elect various types of joint and survivor annuities ("JSAs"): (1) a 50% JSA, (2) a 75% JSA, or (3) a 100% JSA. *Id.*

The percentage of each JSA correlates to the percentage of the amount paid during the participant's life that is disbursed to the surviving beneficiary after the participants' death. *Id.* The Plan's default JSA for married participants who do not affirmatively elect an annuity is the 50% JSA. *Id.* ¶ 40. The 50% JSA is also the Plan's designated QJSA under ERISA. *Id.* Plaintiffs all currently receive benefits under the Plan. *Id.* ¶¶ 13-15. Plaintiffs Skrtich and Peck both have elected 100% JSAs. *Id.* ¶¶ 13-14. Plaintiff Riccitelli has elected a 50% JSA. *Id.* ¶ 15.

The Plan uses actuarial assumptions, consisting of mortality tables and interest rate assumptions, to calculate the present values of both its single life annuities and its joint and survivor annuities. *Id.* ¶¶ 4-7. As required under ERISA, the Plan sets forth the actuarial assumptions used to calculate the "actuarial equivalent" value of its joint and survivor annuities. To calculate actuarial equivalence for its joint and survivor annuity payments, the Plan uses (1) a 7.50% interest rate, and (2) the 1971 Group Annuity Mortality Table for Males (the "1971 GAM") (weighted 95.7% male/4.3% female for participants and 4.3% male and 95.7% female for beneficiaries). *Id.* ¶¶ 7, 43.

**STANDARD OF REVIEW**

To survive a motion to dismiss, Plaintiffs must state a claim for relief that is "plausible" on its face. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). Dismissal is proper if there is a "lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Id.* A complaint must contain

sufficient factual content that the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  Plaintiffs may not rely merely on conclusory assertions; rather, "non-conclusory factual content, and reasonable inferences from that content" must plausibly allege a claim that Plaintiffs are entitled relief.  *Henderson v. Emps. Mut. Cas. Co.*, No. CV-13-01627-PHX-SRB, 2013 WL 12176848, at *1 (D. Ariz. Nov. 20, 2013) (internal citations omitted).

### ARGUMENT

**I.    COUNT I SHOULD BE DISMISSED.**

**A.    Plaintiffs Do Not Plead ERISA Violations Because They Fail Plausibly to Allege that the Plan's Actuarial Assumptions Are Unreasonable.**

Plaintiffs' first claim fails in its entirety because Plaintiffs do not plausibly allege that the actuarial assumptions used by the Plan to convert a single life annuity to Plaintiffs' JSAs are not permitted under ERISA.

Under ERISA, a plan's QJSA and QOSA must be "actuarially equivalent" to a single life annuity.  *See* 29 U.S.C. §§ 1055(d)(1)(B), 1055(d)(2)(A)(ii).  The statute, however, does not define actuarial equivalence.  Plans generally use two actuarial assumptions to calculate the present value of alternative annuity forms: (1) an interest rate, and (2) a mortality table.  FAC ¶¶ 4-6, 44.  Unlike in other ERISA provisions, *see e.g.*, 29 U.S.C. § 1055(g), 26 U.S.C. § 417(e)(3) (mandating assumptions to be used in the calculation of lump sums), ERISA does not mandate specific interest rates or mortality tables to calculate QJSAs or QOSAs.

Although the FAC alleges in a conclusory manner that actuarial assumptions must be reasonable, *see, e.g.*, FAC ¶¶ 44-54, 29 U.S.C. § 1055(d) does not impose a reasonableness requirement with respect to the actuarial assumptions at issue in this case. *Cf. Belknap v. Partners Healthcare Sys., Inc.*, 588 F. Supp. 3d 161, 175 (D. Mass. 2022), *appeal dismissed sub nom., Belknap v. Mass Gen. Brigham, Inc.*, No. 22-1188, 2022 WL 4333752 (1st Cir. Aug. 30, 2022) ("[T]he Court cannot conclude that the calculation of

actuarial equivalence under § 1054(c)(3) of ERISA requires the use of 'reasonable' assumptions, particularly when the plan itself specifically requires the use of particular actuarial assumptions.").  Even assuming that a statutory obligation to use reasonable assumptions exists here, moreover, reasonableness must be measured by reference to a range of permissible actuarial assumptions—not the lump sum assumptions that Plaintiffs pluck from inapplicable Treasury regulations and seek to impose on the Plan.

*Combs v. Classic Coal Corp.*, 931 F.2d 96 (D.C. Cir. 1991), is instructive.  That case concerned a provision of ERISA that—unlike 29 U.S.C. § 1055—expressly imposes a reasonableness requirement.  *See* 29 U.S.C. § 1393 (actuarial assumptions used to calculate withdrawal liability must be "in the aggregate … reasonable").  The court noted that "[g]reat differences of opinion exist as to actuarial methods," and on that basis rejected a challenge to the actuarial assumption used by the plan.  *Combs*, 931 F.2d at 99. As the court explained, "the only requirement is that in every case the actuarial determination will fall within the range of reasonableness," which necessarily "permits the actuary wide latitude" in setting actuarial assumptions.  *Id.* at 100.  Other courts have similarly recognized that actuaries must be given "freedom from second-guessing" when conducting their assessments.  *Vinson Elkins v. C.I.R.*, 7 F.3d 1235, 1238 (5th Cir. 1993) ("[A]ny attempt to specify actuarial assumptions and funding methods for pension plans would in effect place these plans in a straitjacket … and would be likely to result in [unreasonable] cost estimates.").  Put simply, when it comes to actuarial assumptions, "[r]easonableness is a zone, not a point."  *Artistic Carton Co. v. Paper Indus. Union—Mgmt. Pension Fund*, 971 F.2d 1346, 1351 (7th Cir. 1992).

Plaintiffs fail to allege that the actuarial assumptions used by the Plan are outside the zone of reasonableness.  The entire basis for Plaintiffs' claim is their assertion that the 1971 GAM mortality table used by the Plan is "outdated."  *See* FAC ¶¶ 7, 57-61, 69.  As the FAC makes clear, however, an actuarial adjustment is based on the combination of a mortality assumption and an interest rate.  *See id.* ¶ 6.  Any measure of reasonableness would therefore need to consider the effect of the combination of assumptions, rather

than one element in isolation. *See, e.g.*, *Combs*, 931 F.2d at 101 (finding evidence that actuary used a flawed interest rate insufficient to establish unreasonableness because it failed to consider whether "other assumptions" combined with the interest rate "to produce an assumption package reasonable in the aggregate").

Plaintiffs fail to plead any facts suggesting that the interest rate and mortality assumptions used by the Plan together resulted in actuarial adjustments that fell outside the range of reasonableness. Rather, they allege only that their preferred set of actuarial assumptions would result in slightly higher monthly benefit amounts for the forms of payment they elected. *See* FAC ¶¶ 66-68 (Plaintiff Skrtich's monthly benefit would increase by less than 2%; Plaintiff Peck's monthly benefit would increase by less than 6%; Plaintiff Riccitelli's monthly benefit would increase by less than 4%). The mere fact that Plaintiffs' preferred assumptions would have resulted in a slightly higher benefit, however, is insufficient to "nudge" any assertion that the Plan's assumptions fall outside the range of reasonableness "across the line from conceivable to plausible." *Bell Atlantic v. Twombly*, 550 U.S. 544, 577 (2007).

Here, moreover, it would be particularly inappropriate to use Plaintiffs' preferred assumptions in assessing the reasonableness of the Plan's provisions. This is because they are drawn from assumptions mandated by Congress for use for a different purpose. *See* 29 U.S.C. § 1055(g); 26 U.S.C. § 417(e)(3) (requiring the use of specified mortality and interest rate assumptions when calculating lump sum payment amounts). Congress plainly could have mandated use of the lump sum assumptions for purposes of calculating the actuarial equivalence of two different annuities, but it did not do so.[1] The omission by Congress of any provision mandating use of the lump sum assumptions (or

---

[1] Since initially enacting that mandate in 1984, Congress has revised those lump sum payment assumptions but has never sought to do what Plaintiffs ask this Court to do now: impose mandatory actuarial assumptions for annuity payments. *See, e.g.*, Pension Protection Act of 2006, Pub. L. No. 109-280, § 302(a), 120 Stat. 780; Uruguay Rounds Agreement Act, Pub. L. No. 103-465, § 767(c)(2), 108 Stat. 4809; Tax Reform Act of 1986, Pub. L. No. 99-514, § 1139(c), 100 Stat. 2085.

any other specific assumptions) for purposes of calculating Plaintiffs' annuity benefits therefore undercuts Plaintiffs' reliance on those assumptions for that purpose here. *Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224, 1232 (9th Cir. 2020) (internal citations omitted) ("Under the maxim of *expressio unius est exclusio alterius*, there is a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.").

In short, Plaintiffs have failed to plead that the Plan's assumptions fall outside the "zone" of reasonableness—much less that the conversion factors used by the Plan resulted in "actuarial reductions" that were in "excess" of what would be "reasonable." For this reason, Plaintiffs' first claim should be dismissed.

### B.  Plaintiff Skrtich and Plaintiff Peck Fail to Plead ERISA Violations Because They Do Not Allege That the Statutory Provision Underlying Their Claim Applies to Their Benefits.

ERISA is "a comprehensive and reticulated statute," *Nachman Corp. v. PBGC*, 446 U.S. 359, 361 (1980), with different provisions protecting different types of benefits in different ways.  This case focuses entirely on just one of those provisions, 29 U.S.C. § 1055, which protects just two distinct forms of benefits—the QJSA and the QOSA. Because neither Plaintiff Skrtich nor Plaintiff Peck is receiving a QJSA or QOSA, neither states a claim under 29 U.S.C. § 1055.[2]

Traditionally, an employee earns a pension benefit based on the participant's years of service and pay.  The benefit is expressed in the form of an annuity paid each month

---

[2] Other ERISA provisions provide different protections for other forms of benefits, including JSAs other than QJSAs and QOSAs.  For instance, 29 U.S.C. § 1053(a) provides certain protections for JSAs commencing at normal retirement age, and 29 U.S.C. § 1054 provides certain protections when the benefit otherwise payable at normal retirement age is actually paid earlier.  Plaintiff Skrtich and Plaintiff Peck both began receiving benefits prior to the Plan's normal retirement age.  *See* FAC ¶¶ 67-68. Plaintiffs, however, do not invoke the protections of 29 U.S.C. § 1054—which is the ERISA provision that protects the form of benefit they are actually receiving—because there can be no credible assertion that the Plan violated that provision.

from the time the participant retires until the participant dies, which is referred to as a single life annuity. However, ERISA requires pension plans to offer married participants at least two other annuity options: the QJSA and the QOSA. These alternative annuities distribute monthly payments to participants for their lifetimes, and then continue to distribute monthly payments to the participants' spouses for their lifetimes (if longer).

ERISA defines a QJSA as "an annuity for the life of the participant with a survivor annuity for the life of the spouse which is not less than 50 percent (and is not greater than 100 percent of) the amount" payable during the time when both the participant and the spouse are alive. 29 U.S.C. § 1055(d)(1). It further defines a QOSA as "an annuity for the life of the participant with a survivor annuity for the life of the spouse which is equal to the applicable percentage of the amount" payable during the time when both the participant and the spouse are alive. 29 U.S.C. § 1055(d)(2). Importantly, not all JSAs offered by a plan qualify as a QJSA or QOSA. Under ERISA, the plan defines which JSA is the plan's QJSA. *See* 26 C.F.R. § 1.401(a)-20, Q&A-16 (if two or more annuities could qualify as a QJSA, "the plan must designate which one is the QJSA"). ERISA then defines the plan's QOSA based on its QJSA. *See id.* § 1055(d). For example, when a plan's QJSA is a joint and 50% survivor annuity, the QOSA is a joint and 75% survivor annuity. *See id.* § 1055(d)(2)(B).

Here, it is undisputed that the Plan designated the 50% JSA as the QJSA. FAC ¶ 40. Because the Plan designated the 50% JSA as the QJSA, ERISA defines the QOSA for the Plan as a 75% JSA as a matter of law. *See* 29 USC § 1055(d)(2). Yet the FAC makes clear that Plaintiff Skrtich and Plaintiff Peck are both receiving a 100% JSA—not a 50% or a 75% JSA. FAC ¶¶ 13-14. Accordingly, neither Plaintiff Skrtich nor Plaintiff Peck is receiving a QJSA or QOSA—which are the only two forms of benefits protected under the only statutory provision they invoke.

Although Plaintiffs allege generally that Pinnacle West referred to the Plan's 100% JSA option as a "QOSA" in unspecified communications involving unspecified participants, *id.* at ¶ 41, they do not allege that any such communications involved

Plaintiff Skrtich or Plaintiff Peck. More fundamentally, any such communications would be irrelevant to a claim under 29 U.S.C. § 1055. Plaintiffs do not claim that they are receiving any less than what the written terms of the Plan provide or that they were promised a greater benefit than they are receiving. Instead, their sole argument is that the Plan-mandated manner in which their benefits were calculated violated 29 U.S.C. § 1055. Accordingly, the only question is whether their form of payment is subject to this statutory provision. Under 29 U.S.C. § 1055, however, there is only one QOSA entitled to the protections of that that provision, and for plans that designate the QJSA as the 50% JSA, the one and only statutorily protected QOSA is the 75% JSA. Nothing that Pinnacle or the Plan allegedly said or did could change that fundamental legal conclusion.

In short, because neither Plaintiff Skrtich nor Plaintiff Peck is receiving a "qualified joint and survivor annuity" or a "qualified optional survivor annuity" protected by 29 U.S.C. § 1055, neither can state a claim under 29 U.S.C. § 1055. For this additional reason, their claims under 29 U.S.C. § 1055 should be dismissed.

## II.    COUNT II SHOULD BE DISMISSED.

Plaintiffs' claim in Count II for breach of fiduciary duty should be dismissed for two separate reasons.

*First*, the claim is entirely derivative of Plaintiffs' claim under ERISA's rules governing QJSA and QOSA benefits. *See* FAC ¶¶ 83-96. Because Plaintiffs have failed to allege violations of that ERISA provision, their breach of fiduciary claim necessarily fails as well. *See, e.g.*, *DuBuske*, 2019 WL 4688706, at *5 (where plaintiffs "inadequately plead … a forfeiture" resulting from unreasonable conversion factors, "their breach of fiduciary duty claim … fails as a matter of law").

*Second*, even if Plaintiffs had alleged that the Plan's terms violate ERISA, fiduciaries do not breach their duties under ERISA merely by administering a pension plan in accordance with its written terms. While 29 U.S.C. § 1104(a)(1)(D) imposes a duty on plan fiduciaries to follow plan documents that are consistent with ERISA, the proposition that a fiduciary "who administers a pension plan knowing it to be in violation

of ERISA acts in violation of his fiduciary duties … is based on an overly broad reading of ERISA … and comes to this court conspicuously unsupported by caselaw." *Paul v. RBC Cap. Markets LLC*, No. C16-5616, 2018 WL 3630290, at *7 (W.D. Wash. July 31, 2018) (internal citations omitted). Indeed, as one court recently explained, it is a logical "fallacy":

> By its plain language, that statutory provision imposes a fiduciary duty to *follow* plan documents that *are* consistent with ERISA. But from that, the Secretary asks the Court to infer a fiduciary duty *not to follow* plan documents that *are not* consistent with ERISA. As a matter of logic, the latter simply does not follow from the former. Indeed, the fallacy even has a name—"denying the antecedent" or "the fallacy of the inverse."

*Sec'y of Lab. v. Macy's, Inc.*, No. 17-CV-541, 2022 WL 407238, at *5 (S.D. Ohio Feb. 10, 2022) (emphasis in original). For this additional reason, Count II should be dismissed.

## CERTIFICATE OF CONFERRAL

In accordance with LRCiv 12.1(c), Defendants certify that they met and conferred with Plaintiffs by telephone on November 21, 2022 at 9:00 a.m. At that time, Defendants notified Plaintiffs of deficiencies with the Class Action Complaint. In response, Plaintiffs filed their FAC on December 9, 2022. On December 20, 2022, Defendants alerted Plaintiffs to the herein raised deficiencies with the FAC, but the Parties were unable to agree that the FAC is curable in any part by a permissible amendment offered by Plaintiffs.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the FAC with prejudice.

Dated: December 23, 2022

SNELL & WILMER L.L.P.

By: s/Joseph G. Adams
Joseph G. Adams
Zachary G. Schroeder
One East Washington Street
Suite 2700
Phoenix, Arizona 85004

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

COVINGTON & BURLING LLP

Christian J. Pistilli
Robert Newman
Nicholas Pastan
850 Tenth Street, NW
Washington, DC 20001-4956

*Attorneys for Defendants Pinnacle West Capital Corporation, The Benefit Administration Committee of the Pinnacle West Capital Corporation Retirement Plan, and John/Jane Does 1-5*

DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record.

By: _s/Joseph G. Adams_
Joseph G. Adams
Zachary G. Schroeder
One East Washington Street
Suite 2700
Phoenix, Arizona 85004

---

DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT