**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jerome M Skrtich, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Pinnacle West Capital Corporation, et al.,<br><br>Defendants. | No. CV-22-01753-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Defendants Pinnacle West Capital Corporation ("Pinnacle West"), the Benefit Administration Committee of the Pinnacle West Capital Corporation Retirement Plan (the "Committee"), and the Committee's individual members' (collectively "Defendants") Motion to Dismiss the First Amended Class Action Complaint. (Doc. 19.) Plaintiffs filed a Response (Doc. 23), and Defendants filed a Reply (Doc. 25). The Court held Oral argument on August 3, 2023. After considering the pleadings, relevant law, and oral argument, the Motion will be denied.

**I.    BACKGROUND**

Plaintiffs' filed this class action suit based on Defendants' alleged breach of fiduciary duty and violations of ERISA. Pinnacle West is a holding company that sponsors the Pinnacle West Capital Corporation Retirement Plan ("Plan"). The Committee is the named fiduciary and the Plan Administrator. The Plan provides participants with retirement benefits in the form of a single life annuity, which the Plan calls a "straight life annuity." Participants can also choose from three joint and survivor ("JSA") options. The

Plan offers JSAs in percentages of 50, 75 and 100. Thus, a 50% JSA pays the spouse half the amount paid to the participant before his or her death; a 75% JSA pays the spouse three quarters; and a 100% JSA pays the entire amount.

Plaintiffs Skrtich, Peck, and Riccitelli are plan participants who worked for Pinnacle West. Skrtich and Peck receive Plan benefits as a 100% JSA, and Riccitelli receives a 50% JSA. Plaintiffs allege that under ERISA, JSA benefits that pay between 50% and 100% of the amount paid during the joint lives of the participant and spouse must be at least the actuarial equivalent of the straight life annuity. They allege that the actuarial assumptions used to calculate JSA benefits under the Plan cause them to be underpaid. The basic premise of Plaintiffs' claims is that Defendants use an outdated mortality table from 1971 to calculate benefits instead of a more contemporary one. Plaintiffs argue that ERISA requires reasonable factors to calculate actuarial equivalence, and that Defendants' using an outdated mortality table is unreasonable. Defendants now move to dismiss Plaintiffs' First Amended Class Action Complaint ("Complaint") for failure to state a claim.

## II.   LEGAL STANDARD

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting

*Twombly*, 550 U.S. at 557).

## III. DISCUSSION

### A. ERISA Requirements

Generally, a pension plan must provide benefits to plan participants in the form of a straight life annuity or, if they are married, a JSA. *See* 29 U.S.C. § 1055. JSA benefits are to be provided in the form of a qualified joint and survivor annuity ("QJSA"). *Id.* A QJSA is defined as an annuity:

> (A) for the life of the participant with a survivor annuity for the life of the spouse which is not less than 50 percent of (and is not greater than 100 percent of) the amount of the annuity which is payable during the joint lives of the participant and the spouse, and
> (B) which is the actuarial equivalent of a single annuity for the life of the participant.

29 U.S.C. § 1055(d)(1). Pension plans must also offer a qualified optional survivor annuity ("QOSA"). A QOSA means an annuity:

> (i) for the life of the participant with a survivor annuity for the life of the spouse which is equal to the applicable percentage of the amount of the annuity which is payable during the joint lives of the participant and the spouse, and
> (ii) which is the actuarial equivalent of a single annuity for the life of the participant.

29 U.S.C.A. § 1055(d)(2).

Both a QJSA and QOSA must be the actuarial equivalent of the straight life annuity under a pension plan, but ERISA does not define "actuarial equivalence." Courts have interpreted actuarial equivalence to mean that two streams of payments must have the same present value when calculated with a given set of actuarial assumptions. *See Masten v. Metro. Life Ins. Co*., 543 F. Supp. 3d 25, 34 (S.D.N.Y. 2021) (quoting *Stephens v. U.S. Airways Grp*., Inc., 644 F.3d 437, 440 (D.C. Cir. 2011); *Cruz v. Raytheon Co*., 435 F. Supp. 3d 350, 352 (D. Mass. 2020); *Smith v. Rockwell Automation, Inc*., 438 F. Supp. 3d 912, 914 (E.D. Wis. 2020). To calculate the present value of an annuity, a plan uses mortality tables and interest rate assumptions as its factors. The mortality table estimates how long the participant and beneficiary will live. The interest rate accounts for the value of money

over time. These mortality and interest rate assumptions are then used to generate a conversion factor, which plan administrators use to calculate payments.

### B. ERISA violation

Defendants move for dismissal because ERISA does not impose a "reasonableness" requirement on the actuarial assumptions used and because, even if it did, the Complaint's allegations do not support a finding that the Plan's assumptions are unreasonable. The Plan uses the 1971 Group Annuity Mortality Table for Males and a 7.5% interest rate. Plaintiffs allege that older mortality tables predict people will die at faster rates than current mortality tables. Plaintiffs further allege that when interest rates are equal, the Plan's use of older mortality tables decreases the preset value of a JSA.

### i. Reasonableness

On its face, § 1055 contains no reasonableness requirement. Defendants rely on *Belknap v. Partners Healthcare Sys., Inc*. to support their argument that ERISA does not address reasonableness. 588 F. Supp. 3d 161 (D. Mass. 2022). In *Belknap*, the Court held that there was no reasonableness requirement. 588 F. Supp. 3d at 175. The Court found that "[i]f Congress had intended § 1054(c)(3) to require actuarial equivalence to be calculated using 'reasonable' assumptions, it knew how to do so." *Id*. at 171. The Court found that tax provisions and regulations cited for a reasonableness requirement only applied to lump-sum benefits and not annuities. *Id* at 173. Plaintiffs contend ERISA does contain a reasonableness requirement and the ruling in *Belknap* is wrong.

Plaintiffs cite several other cases imposing a reasonableness requirement. *See Herndon v. Huntington Ingalls Indus., Inc*., No. 4:19-CV-52, 2020 WL 3053465, at *2 (E.D. Va. Feb. 20, 2020) ("Under a straightforward and plain reading of the statute and regulations, Defendants must use 'reasonable' data to ensure that Plaintiff is receiving benefits that are equivalent to a single life annuity."); *Smith*, 438 F. Supp. 3d at 921 ("ERISA likely does not require that plans use any specific mortality table or any specific interest rate at any given time. Rather, they may choose from the options that fall within the range of reasonableness at the time of the benefit determination, as determined by

professional actuaries."); *Urlaub v. CITGO Petrol. Corp.*, No. 21 C 4133, 2022 WL 523129, at *6 (N.D. Ill. Feb. 22, 2022) ("But it cannot possibly be the case that ERISA's actuarial equivalence requirements allow the use of unreasonable mortality assumptions."); *Cruz,* 435 F. Supp. at 352 ("Treasury Department regulations require employers to use 'reasonable' actuarial assumptions to determine actuarial equivalence.").

The Court finds the analysis in *Herndon*, *Smith*, *and Urlaub* persuasive.  Even the Court in *Belknap* acknowledged that plan sponsors do not have unfettered discretion in calculating benefits.  588 F. Supp. 3d at 175.  While the Court agrees that the terms "reasonable" or "reasonableness" do not appear in § 1055, the statute requires actuarial *equivalence* and the calculation of that equivalence necessitates the use of reasonable assumptions.  The Court therefore finds that § 1055 contains a reasonableness requirement.

### ii.     **Plaintiffs Have Alleged the Assumptions are Unreasonable**

Arguing that reasonableness represents a "zone" and not a "point," Defendants challenge whether the allegations are sufficient to allege unreasonableness.  *See Artistic Carton Co. v. Paper Indus. Union Mgmt. Pension Fund*, 971 F.2d 1346, 1351 (7th Cir. 1992) ("Reasonableness is a zone, not a point.").  Defendants assert Plaintiffs' lone criticism of an outdated mortality table renders the claim insufficient because that allegation does not alone establish the unreasonableness of the interest rate and mortality assumptions.  The Plan's 7.5% interest rate far exceeds standard interest rates at the time of Plaintiffs' retirement, and Defendants contend the higher interest rate may offset an allegedly outdated mortality table.  Plaintiffs' allegations do not address this.

The Complaint does detail how Plaintiffs' benefits would increase if reasonable mortality and interest rate assumptions are used.  The Court notes that the Complaint includes calculations using an updated mortality table but also with a lower interest rate.  Plaintiffs' calculations do therefore consider and adjust for the Plan's higher interest rate.  Plaintiffs also allege that Defendants use different, and more current, assumptions when calculating its pension liabilities, making the use of outdated mortality tables unreasonable.  The Court agrees with Defendants that the accounting rules for calculating pension

liabilities are different than the rules for calculating payments an individual is due under the Plan. The Court thus gives no weight to this argument.

Defendants also seem to argue that the supposed change in benefit payments is too small to place the calculations out of the "zone" of reasonableness. Plaintiffs counter that the changes under Plaintiffs' new calculations are between 2% and 6%. Plaintiffs continue that while these amounts might be small to a big company, they represent significant increases to payment recipients. At this stage, well pled factual assertions must be taken as true. Defendants' argument cannot be appropriately resolved at the dismissal stage. *See Smith*, 438 F. Supp. 3d at 924 ("Whether the tables are in fact outside the range of reasonableness is a matter to be resolved after discovery, including, if necessary, expert actuarial testimony."). The Court thus finds Plaintiffs have sufficiently pled that the assumptions are unreasonable.

### iii.   29 U.S.C.A. § 1055 Does Not Apply to Plaintiffs Skrtich and Peck

Defendants contend the actuarial equivalence requirement does not apply to Plaintiffs Skrtich and Peck because they are receiving the 100% plan. Specifically, Defendants contend that the 100% payments do not qualify as either a QJSA or QOSA. Their position is that § 1055 only provides for one QJSA and one QOSA. And that the Plan designates the 50% JSA as the QJSA and the 75% JSA as the QOSA. Plaintiffs respond that the 100% JSA is also a QJSA because it is an alternative offered to employees that meets the statutory requirements of a QJSA.

While the Court generally agrees with Defendants that there can be only one QJSA and one QOSA by definition, ERISA's interpreting regulations appear to allow for additional forms of QJSA's covered by § 1055. The regulation states in part:

> In the case of an unmarried participant, the QJSA may be less valuable than other optional forms of benefit payable under the plan. In the case of a married participant, the QJSA must be at least as valuable as any other optional form of benefit payable under the plan at the same time. Thus, if a plan has two joint and survivor annuities that would satisfy the requirements for a QJSA, but one has a greater actuarial value than the other, the more valuable joint and survivor annuity is the QJSA. If there are two or more actuarially equivalent joint and survivor annuities that satisfy the

>requirements for a QJSA, the plan must designate which one is the QJSA and, therefore, the automatic form of benefit payment. A plan, however, may allow a participant to elect out of such a QJSA, without spousal consent, in favor of another actuarially equivalent joint and survivor annuity that satisfies the QJSA conditions. Such an election is not subject to the requirement that it be made within the 90–day period before the annuity starting date. For example, if a plan designates a joint and 100% survivor annuity as the QJSA and also offers an actuarially equivalent joint and 50% survivor annuity that would satisfy the requirements of a QJSA, the participant may elect the joint and 50% survivor annuity without spousal consent. The participant, however, does need spousal consent to elect a joint and survivor annuity that was not actuarially equivalent to the automatic QJSA.

26 C.F.R. § 1.401(a)–20 (2006).

Defendants did not respond to this argument in its Reply or at oral argument. Therefore, at this stage, the Court rejects Defendants' argument that Plaintiffs Skrtich and Peck are unentitled to the protections of § 1055.

### C. Breach of Fiduciary Duty

Section 1104 sets forth fiduciary duties relative to ERISA plans. *See* 29 U.S.C. § 1104(a)(1). A fiduciary must act "solely in the interest of the participants and beneficiaries" and "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III." *Id.* Defendants argues Plaintiffs' breach of fiduciary duty claim should be dismissed because it is entirely derivative of Plaintiffs' ERISA claims and, as previously discussed, Defendants argued there was no ERISA violation. But this argument fails because the Court finds Plaintiffs alleged a viable ERISA claim.

Defendants next argue that no breach of fiduciary duty occurs when the fiduciary complies with a plan's terms. In response, Plaintiffs argue a fiduciary duty exists to act in the interest of the participants and beneficiaries and by extension to ignore the Plan's use an outdated mortality table. Defendants cite many cases that recognizing that a requirement of fiduciaries to ignore plan terms that may be in violation of ERISA is untenable. *See Cement & Concrete Workers Dist. Council Pension Fund v. Ulico Cas.*

*Co.*, 387 F. Supp. 2d 175, 185 (E.D.N.Y. 2005) ("However, the plaintiffs' proposed construction of this statutory provision—that a plan trustee owes a fiduciary duty to depart from any provision of the plan documents which he knows to violate ERISA and/or to amend that provision—goes significantly beyond the plain command of the statute."), *aff'd*, 199 F. App'x 29 (2d Cir. 2006); *Sec'y of Lab. v. Macy's, Inc.*, No. 1:17-CV-541, 2022 WL 407238, at *5–6 (S.D. Ohio Feb. 10, 2022) (following *Ulico*). Plaintiffs also cite cases addressing this issue, but the Court finds these cases unpersuasive. The Court in *Fifth Third Bancorp v. Dudenhoeffer* analyzed fiduciary duty in the context of a stock ownership plan—not an ERISA plan. 573 U.S. 409, 421 (2014). In *Pender v. Bank of Am. Corp.*, the Court addressed the bulk transfer of 401(k) assets to a different defined benefit plan. 756 F. Supp. 2d 694, 704 (W.D.N.C. 2010). There was a specific ERISA statue that prohibited using 401(k) assets for a third party's gain. *See id.* at 705.

Here, there is no ERISA statute mandating how actuarial equivalence should be calculated. In contrast to the cases Plaintiffs cite, significant discretion is afforded to plan administrators as to what purpose actuarial assumptions are to be used. The Court therefore finds Plaintiffs have failed to state a breach of fiduciary duty claim, and that claim will be dismissed.

## IV.    CONCLUSION

For the reasons discussed above,

**IT IS ORDERED** granting in part and denying in part Defendants' Motion to Dismiss the First Amended Class Action Complaint. (Doc. 19.) Plaintiffs' breach of fiduciary duty claim is dismissed, yet their first claim for relief remains.

Dated this 7th day of August, 2023.

Honorable Susan M. Brnovich
United States District Judge