1  Ron Kilgard, Bar No. 005902
   Keller Rohrback L.L.P.
2  3101 North Central Avenue, Suite 1400
   Phoenix, AZ 85012
3  Telephone: (602) 248-0088
   Facsimile: (602) 248-2822
4  rkilgard@kellerrohrback.com

5  *Attorney for Plaintiffs*

6  [*Additional Counsel on Signature Page*]

7

8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

9

| | |
|---|---|
| 10  Jerome M. Skrtich, et al., on behalf of themselves and all others similarly situated, | No. CV-2:22-01753-SMB |
| 11 | **CLASS ACTION** |
| 12               Plaintiffs, | |
|      v. | **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND SUPPORTING MEMORANDUM** |
| 13  Pinnacle West Capital Corporation, et al., | |
| 14 | Oral Argument Requested |
|                Defendants. | |
| 15 | |

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

I.     INTRODUCTION ................................................................................................ 1

3

II.    BACKGROUND ................................................................................................ 2

4

    A.    Description of the Plan................................................................................. 2

5

6

    B.    The Proposed Class ..................................................................................... 4

7

III.    ARGUMENT .................................................................................................... 4

8

    A.    Rule 23(a)...................................................................................................... 4

9

10

        1.    Numerosity ...................................................................................... 5

11

        2.    Commonality .................................................................................... 5

12

        3.    Typicality......................................................................................... 6

13

14

        4.    Adequacy ......................................................................................... 7

15

    B.    The Class Satisfies Each Requirement of Rule 23(b)............................... 9

16

        1.    Rule 23(b)(1)(A)............................................................................. 9

17

        2.    Rule 23(b)(1)(B)........................................................................... 10

18

19

        3.    Rule 23(b)(2) ................................................................................. 11

20

        4.    Rule 23(b)(3) ................................................................................. 12

21

IV.    CONCLUSION .......................................................................................... 13

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2 **Cases**

3 *Alday v. Raytheon Co.*,

4        619 F. Supp. 2d 726 (D. Ariz. 2008) .................................................. 9, 11

5 *Amchem Prod., Inc. v. Windsor*,

6        521 U.S. 591 (1997) .......................................................................... 9, 12

7 *Amgen Inc. v. Conn. Ret. Plans. & Tr. Funds*,

8        568 U.S. 455 (2013) ............................................................................. 12

9 *Armstrong v. Davis*,

10       275 F.3d 849 (9th Cir. 2001) .................................................................. 5

11 *Bryant v. Arizona Pipe Trades Pension Tr. Fund*,

12       No. CV-13-01563-PHX-GMS, 2015 WL 300385

13       (D. Ariz. Jan. 22, 2015) ....................................................... 6, 7, 8, 10, 12

14 *Coppel v. SeaWorld Parks & Ent., Inc.*,

15       347 F.R.D. 338 (S.D. Cal. 2024) ............................................................ 9

16 ERISA § 502(a)(3) ........................................................................................ 11

17 *Escalante v. California Physicians' Serv.*,

18       309 F.R.D. 612 (C.D. Cal. 2015) ............................................................ 7

19 *Foster v. Adams & Assocs., Inc.*,

20       No. 18-CV-02723-JSC, 2019 WL 4305538 (N.D. Cal. Sept. 11, 2019)................ 11

21 *Gotta v. Stantec Consulting Servs. Inc.*,

22       No. CV-20-01865-PHX-GMS, 2023 WL 3205526 (D. Ariz. May 2, 2023) ........... 7

23 *Hanon v. Dataproducts Corp.*,

24       916 F.2d 497 (9th Cir.1992) ................................................................... 7

25 *In re Arizona Theranos, Inc., Litig.*,

26       No. 2:16-CV-2138-HRH, 2020 WL 5435299 (D. Ariz. Mar. 6, 2020) .................. 8

27 *In re Citigroup Pension Plan ERISA Litig.*,

28       241 F.R.D. 172 (S.D.N.Y.2006).............................................................. 10

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,

    571 F.3d 953 (9th Cir. 2009) ................................................................. 12

*Kernan v. Metro. Life Ins. Co.*,

    No. 18-CV-11229, 2023 WL 3620884, at *1 (S.D.N.Y. Mar. 17, 2023) ......... 4, 6, 7

*McAlister v. Metro. Life Ins. Co.*,

    No. 18 C 11229, 2023 WL 5769491 (S.D.N.Y. Sept. 7, 2023) ......................... 4, 10

*McClure v. State Farm Life Ins. Co.*,

    341 F.R.D. 242 (D. Ariz. 2022) ............................................................. 5, 6

*Moyle v. Liberty Mut. Ret. Ben. Plan*,

    823 F.3d 948, 964 (9th Cir. 2016), *as amended on denial*

    *of reh'g and reh'g en banc* (Aug. 18, 2016) ....................................... 7, 9

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,

    31 F.4th 651 (9th Cir. 2022) .................................................................. 3

*Ortega-Melendres v. Arpaio*,

    836 F. Supp. 2d 959 (D. Ariz. 2011) ...................................................... 5

*Ortiz v. Fibreboard Corp.*,

    527 U.S. 815 (1999) ........................................................................... 11

*Owen v. Punch Bowl Minneapolis, LLC*,

    No. 19-CV-955 (NEB/TNL), 2020 WL 8256371 (D. Minn. July 17, 2020) .......... 12

*Parsons v. Ryan*,

    754 F.3d 657 (9th Cir. 2014) ................................................................ 11

*Tyson Foods, Inc. v. Bouaphekeo*,

    521 U.S. 591, 623 (2016) ...................................................................... 12

*Urlaub v. CITGO Petroleum Corp.*,

    No. 21 C 4133, 2024 WL 2209538 (N.D. Ill. May 16, 2024) ................... 4, 6, 7, 10

*Wal–Mart Stores, Inc. v. Dukes*,

    564 U.S. 338, 358 (2011) ................................................................. 6, 11

**Statutes**

ERISA § 205(d) ................................................................................................ 2, 6

Federal Rule of Civil Procedure 23 ................................................................. 4, 9

Federal Rule of Civil Procedure 23(a) ......................................................... 4, 5, 8

Federal Rule of Civil Procedure 23(a)(1) .......................................................... 5

Federal Rule of Civil Procedure 23(a)(2) .......................................................... 5

Federal Rule of Civil Procedure 23(a)(3) ....................................................... 6, 7

Federal Rule of Civil Procedure 23(a)(4) ........................................................... 7

Federal Rule of Civil Procedure 23(b)(1)(A) ................................................. 9, 10

Federal Rule of Civil Procedure 23(b)(1)(B) .............................................. 10, 11

Federal Rule of Civil Procedure 23(b)(2) ........................................................ 11

Federal Rule of Civil Procedure 23(b)(3) ................................................... 12, 13

1    Plaintiffs Jerome M. Skrtich, Joseph F. Peck, and Michael Riccitelli respectfully

2    submit this Motion for Class Certification and supporting Memorandum of Points and

3    Authorities. The motion is further supported by the Declaration of M. Zane Johnson

4    ("Johnson Decl.") and accompanying exhibits. [1] Plaintiffs move that the court certify a class

5    as defined herein pursuant to Rule 23 of the Federal Rules of Civil Procedure, appoint

6    Plaintiffs as Class Representatives, appoint Motley Rice LLC, Izard Kindall & Raabe LLP

7    as class counsel, and appoint Keller Rohrback LLP as local counsel.

8    ## I.    INTRODUCTION

9    Plaintiffs are former employees of Pinnacle West who participate in the Pinnacle

10   West Capital Corporation Retirement Plan ("Plan"). Plaintiffs allege that Pinnacle West

11   (the Plan's administrator) violated the Employee Retirement Income Security Act of 1974

12   ("ERISA") by paying joint and survivor annuities ("JSAs") that are too low. ERISA

13   requires that JSAs for married retirees be the "actuarial equivalent" of the "straight life

14   annuity" ("SLA"). Compl., ECF No. 17, ¶¶ 1-2, 79. This means the SLAs and JSAs must

15   have the same present value, but in this case, they did not.

16   Defendants' failure stems from the Plan's use of mortality data *from the 1960s* to

17   calculate benefits, resulting in JSA benefit amounts that are less than actuarially equivalent

18   SLA benefit amounts. *Id.* at ¶¶ 86-101. Because this mortality data is outdated, it wrongly

19   predicts that retirees will die earlier than expected under current mortality tables based on

20   current mortality experience. This causes married retirees to receive JSAs that have lower

21   present values than the SLAs they are offered and results in monthly payments that are

22   lower than actuarially equivalent payments.

23   Plaintiffs' claims are well-suited for a class action because Defendants used the *same*

24   outdated formula to calculate the *same* forms of JSA benefits for all Class Members.

25   Plaintiffs move to certify a Class compromised of 873 Plan participants who were harmed

26   in the exact same way as the Plaintiffs because they are all receiving JSA benefits that are

27   less than the actuarial equivalent of their SLA benefits. As detailed below, the Class satisfies

28   [1] Exhibits to the Johnson Decl. are cited as "Ex. __."

all perquisites for class certification under Federal Rule of Civil Procedure 23. Accordingly, the Court should certify the proposed Class.

## II.    BACKGROUND

### A.    Description of the Plan

The Plan is a "defined benefit plan" under ERISA covering Pinnacle West employees. Compl. ¶ 36. The Plan has two primary parts: the "Traditional" part and the "Retirement Account Balance" part. Under the Traditional part, participants earn a pension benefit in the form of an SLA based on their average monthly pay and years of service at retirement. *Id*. ¶ 38. Plan participants employed before December 31, 2002 earned Traditional benefits. *Id*. ¶ 39. In 2003, the Plan began offering the Retirement Account Balance part, under which participants accrue benefits under a cash balance formula. *Id*. ¶ 39. Plan participants employed by Pinnacle West as of December 31, 2002 could elect to continue earning benefits under the Traditional part or begin earning benefits under the Retirement Account Balance part. *Id*. All participants hired after 2002 accrue benefits under the Retirement Account Balance part. *Id*.

Under both parts, participants may select an SLA or one of three JSAs. *Id*. ¶ 40. The JSAs pay an annuity to the participant for the participant's life, and a contingent annuity to the participant's spouse for the spouse's life if the participant dies first. Both parts offer JSAs with survivor percentages of 50%, 75%, and 100%. *Id*. Only married participants can select a JSA. *See, e.g.*, Ex. 1, 2020 Plan Document at § 6.4 (survivor payment of 100% JSA paid to "[t]he surviving spouse").

The monthly benefit payable as a JSA, regardless of the survivor percentage, is less than the amount payable as an SLA because the JSA accounts for the possibility that the Plan will pay benefits for longer if a participant dies before the participant's spouse. Compl. ¶ 3. However, if the survivor percentage is between 50% and 100%, like the Plan's JSAs, the JSA must be actuarially equivalent to, i.e. at least as valuable as, the SLA. *Id*. (citing ERISA § 205(d)).

Comparing two pension forms for actuarial equivalence involves present value calculations. Compl. ¶ 4. This involves using a mortality assumption to determine the likelihood that each payment will be made (i.e., the participant or spouse will be alive) and a discount rate assumption to discount each expected future payment to account for the time value of money. *Id*. To measure actuarial equivalence, the mortality and discount rate assumptions must be current and reasonable. For mortality, the assumption must use mortality rates consistent with the Plan's actual participant and beneficiary mortality experience. Expert Report of Ian H. Altman ("Altman Report"), Ex. 2, at 11-12. For the discount rate, the rate must reflect economic conditions that were current when the benefit was calculated. *Id*. at 13; Compl. ¶¶ 29-35.

Plaintiffs' expert, Ian Altman, opined that the Plan's JSAs are lower than the actuarial equivalent SLAs earned by the named plaintiffs and 800+ members of the proposed Class. Expert Report of Ian H. Altman ("Altman Report"), Ex. 2, at 21. Altman compared the Plan JSAs to JSA benefits generated by the "Applicable Mortality Table," the mortality table published annually by the Treasury Department, and the "Applicable Interest Rate," interest rates published monthly by the Treasury Department. (together, the "Treasury Assumptions"). *Id*. at 15-21. Altman used the same Treasury Assumptions that the plan uses in several benefit calculations, including calculating lump sum distributions and "Over and Under" pension payments. Ex. 2, 2020 Plan Document, at § 5.19.

Mr. Altman determined that, for the Plaintiffs and the Class, the Plan's monthly JSA benefits are less than JSA benefits calculated using reasonable assumptions. For example, Mr. Skrtich's monthly benefits are $96 per month lower than an actuarially equivalent JSA, Mr. Peck's monthly benefits are $220 per month lower, and Mr. Riccitelli's monthly benefits are $113 per month lower. Ex. 2, Altman Report, at 20-21.[2]

---

[2] Defendants' expert may contest Altman's conclusions. But the proper inquiry at this stage is to determine whether his model is "capable of showing class-wide impact, not to reach a conclusion on the merits" of Plaintiffs claims. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 676 (9th Cir. 2022).

**B.      The Proposed Class**

Plaintiffs seek to certify the following Class:

> All participants and beneficiaries of the Plan who began receiving a JSA after November 1, 2016 whose monthly JSA benefit would be greater if calculated using the Applicable Mortality Table as defined in Internal Revenue Code § 417(e)(3)(B) in the year of the participant's Benefit Commencement Date and the Applicable Interest Rate as defined in Internal Revenue Code § 417(e)(3)(C) from the October of the year preceding the participant's Benefit Commencement Date.

> Excluded from the Class are Plan participants receiving an "Over/Under" form of payment under § 6.7 of the Plan, Defendants, and any individuals who are subsequently to be determined to be fiduciaries of the Plans.

The Class consists of participants who were married when they retired, elected JSA benefits with their spouse as their beneficiary, and received JSA benefits less valuable than the SLA benefits they earned under the Plan.[3]

## III.    ARGUMENT

The Court should certify this case as a class action because the proposed Class meets the requirements of Rule 23(a) and Rules 23(b)(1), (b)(2) and/or (b)(3). In two recent cases where plaintiffs similarly alleged they were not receiving actuarially equivalent JSAs under ERISA § 205(d), the courts certified classes that were much like the classes proposed here. *See Urlaub v. CITGO Petroleum Corp.*, No. 21 C 4133, 2024 WL 2209538 (N.D. Ill. May 16, 2024); *McAlister v. Metro. Life Ins. Co.*, No. 18 C 11229, 2023 WL 5769491 (S.D.N.Y. Sept. 7, 2023).[4] For the reasons the courts in *Urlaub* and *McAlister* granted certification and as explained below, this Court should likewise grant Plaintiffs' Motion.

**A.      Rule 23(a)**

Rule 23(a) provides that one or more class members may sue on behalf of a class when: (1) the class is so numerous that joinder of all members is impracticable; (2) there

---

[3] The fact that these definitions do not include every Plan participant, including those without losses, is irrelevant. *See Guadiana v. State Farm Fire & Cas. Co.*, No. CIV07-326 TUCFRZGEE, 2009 WL 6325542, at *9 (D. Ariz. Dec. 18, 2009), *report and recommendation adopted*, No. 07-326-TUC-FRZ, 2010 WL 1335626 (D. Ariz. Mar. 31, 2010) (issue related to individuals excluded from class is moot).

[4] Adopting report and recommendation, *Kernan v. Metro. Life Ins. Co.*, No. 18-CV-11229, 2023 WL 3620884, at *1 (S.D.N.Y. Mar. 17, 2023) (hereinafter "*McAlister R&R*").

are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The proposed Class satisfies each of Rule 23(a)'s requirements.

### 1. Numerosity

A class satisfies the numerosity requirement if members are so numerous that joinder would be impracticable. Fed. R. Civ. P. 23(a)(1) . "Generally, forty or more members will satisfy the numerosity requirement." *McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 249 (D. Ariz. 2022). Here, there are 873 members of the proposed Class[5] according to the Plan's records and Altman's calculations. Ex. 2, Altman Report, at 21. Accordingly, numerosity is satisfied.

### 2. Commonality

A proposed class satisfies Rule 23(a)(2) 's requirement if "there is at least one question of fact or law common to the class." *McClure*, 341 F.R.D. at 250. "[C]ommonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 989 (D. Ariz. 2011) (citing *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)).

The lawsuit challenges the Plan-wide formula for calculating JSAs. Plaintiffs allege that the Plan's JSA benefits are not actuarially equivalent to the SLAs Class Members were offered. As previously mentioned, the driver of Class Members' harm is the actuarial assumptions used to generate JSA benefits. Accordingly, determining whether the application of those assumptions excessively reduced Class Members' pensions will resolve a central issue in the case. This alone satisfies commonality. *McClure*, 341 F.R.D. at 250 (finding commonality satisfied because "each claim is based on a form contract and a uniform course of conduct towards each [class member].").

---

[5] The size of the proposed class is likely to increase, as Plan participants continue to retire and choose JSA benefits.

Moreover, each Class Member suffered the same injury: their monthly pension payments are less than the actuarial equivalent of the SLAs they were offered. Their claims that the Plan's actuarial assumptions do not generate actuarially equivalent JSA benefits can be resolved on class-wide basis. *Bryant v. Arizona Pipe Trades Pension Tr. Fund*, No. CV-13-01563-PHX-GMS, 2015 WL 300385, at *4 (D. Ariz. Jan. 22, 2015) (certifying class, finding "all putative class members' right to relief under ERISA… arises out of the same alleged misconduct"). Additional key common factual questions include:

- What actuarial assumptions should be used to determine whether JSA benefits paid to Class Members are actuarially equivalent?
- Are the Plan's JSA benefits less valuable than the SLA benefits earned by the Class members?
- What methodology should be used to determine whether Class Members are receiving less than their actuarially equivalent benefits?

Common legal issues include:

- Whether ERISA requires that JSA benefits be the actuarial equivalent to the SLA offered to participants;
- Whether the failure to provide JSA benefits that are actuarially equivalent to the SLAs offered to participants violates ERISA § 205(d);
- Whether Class Members are entitled to have their past and future benefits recalculated and corrected.

None of the questions above are unique to the Plaintiffs. *See Bryant*, 2015 WL 300385 at *4 (finding commonality where the questions were not "of such an individualized nature that class treatment would be inappropriate"). The determination of these common questions will result in common answers to drive the resolution of the litigation. *See Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 358 (2011); *see also Urlaub*, 2024 WL 2209538, at *3 (commonality satisfied where plaintiffs alleged their JSAs were not actuarially equivalent to the SLAs they were offered) *McAlister R&R*, 2023 WL 3620884, at *8 (same).

### 3. Typicality

Rule 23(a)(3)'s typicality requirement is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality refers to the "nature of the claim or defense of the class representative, and not the specific facts from which it arose or the relief sought." *McClure*, 341 F.R.D. at 250. "As long as the

representative's claims are reasonably coextensive with those of absent class members, they need not be substantially identical." *Id*. "'The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class.' 'The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Bryant*, 2015 WL 300385, at *7 (D. Ariz. Jan. 22, 2015) (quoting *Hanon v. Dataproducts Corp.*, 916 F.2d 497, 508 (9th Cir.1992)).

Here, all Class Members were injured in a uniform way and seek classwide equitable remedies under ERISA, including declarations that the Plan's actuarial assumptions do not generate actuarially equivalent JSAs and that Defendants violated ERISA, a re-calculation and correction of benefits, and an accounting. Compl. ¶ 82. Moreover, Defendants' conduct was uniform – Defendants used the same outdated assumptions to calculate JSA for all Class Members, which Plaintiffs allege did not generate actuarially equivalent benefits. *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 964 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016) (affirming certification of class "where the defendant's representations were allegedly made on a uniform and classwide basis"); *Gotta v. Stantec Consulting Servs. Inc.,* No. CV-20-01865-PHX-GMS, 2023 WL 3205526, at *1 (D. Ariz. May 2, 2023) (typicality satisfied in ERISA case because "the key issues in this case concern Defendants' conduct, not individual actions taken by the Plaintiffs"); *Escalante v. California Physicians' Serv.*, 309 F.R.D. 612, 619 (C.D. Cal. 2015) (typicality satisfied in ERISA case where "Plaintiff is challenging an undisputedly uniform practice…"); *Urlaub*, 2024 WL 2209538, at *4 (typicality satisfied where plaintiffs alleged their JSAs were not actuarially equivalent to the SLAs they were offered); *McAlister R&R*, 2023 WL 3620884, at *8 (same). Rule 23(a)(3)'s typicality requirement is satisfied.

### 4.    *Adequacy*

Rule 23(a)(4)'s adequacy requirement asks "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named

1  plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Bryant*,

2  2015 WL 300385, at *7 (D. Ariz. Jan. 22, 2015). "This inquiry has a tendency to overlap

3  with the commonality and typicality criteria of Rule 23(a)." *Id*. The named Plaintiffs and

4  their proposed counsel satisfy these criteria.

5        Here, Plaintiffs do not have any conflicts of interest with other Class members. As

6  discussed with respect to commonality and typicality, Plaintiffs' claims rise and fall on the

7  same facts and legal theories as those of all Class Members.

8        Plaintiffs have prosecuted this action vigorously on behalf of the Class. Plaintiffs

9  have actively participated in the litigation to protect the Class's interests. Among other

10  things, Plaintiffs have produced relevant documents and provided material information to

11  counsel; reviewed filings including the Complaint before this case was filed; gathered

12  documents in response to Defendants' document requests; given deposition testimony; and

13  understand their roles as class representatives. Johnson Decl. ¶ 6.

14        Plaintiffs propose to have Motley Rice, LLC ("Motley Rice") and Izard Kindall &

15  Raabe, LLP ("IKR") serve as Class Counsel, and Keller Rohrback L.L.P. serve as local

16  counsel. These firms have prosecuted the case to date, consulting with Plaintiffs and

17  experts; investigated the claims; drafted a detailed complaint; successfully opposed a

18  motion to dismiss; conducted discovery; negotiated litigation issues with opposing counsel;

19  and prepared this motion. *Id*. ¶¶ 7-8.

20        Proposed Class Counsel are well-qualified to represent the Class. Motley Rice and

21  IKR have been class counsel in dozens of ERISA class actions around the country, including

22  several other lawsuits challenging benefit calculations. Exs. 4 (Motley Rice Resume) and 5

23  (IKR Resume). Keller Rohrback L.L.P. has been recognized in this district as "highly

24  experienced class action counsel." *In re Arizona Theranos, Inc., Litig*., No. 2:16-CV-2138-

25  HRH, 2020 WL 5435299, at *11 (D. Ariz. Mar. 6, 2020). The proposed counsel also have

26  no conflicts with the proposed Class.

27        The proposed class satisfies Rule 23(a).

28

**B.      The Class Satisfies Each Requirement of Rule 23(b)**

A class that meets Rule 23(a)'s requirements may be certified if it satisfies one of Rule 23(b)'s requirements. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Here, the Class may be certified under either Rule 23(b)(1), (b)(2) or (b)(3).

**1.      *Rule 23(b)(1)(A)***

Rule 23(b)(1)(A) is satisfied where "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). The rule is designed for cases "where the party is obliged by law to treat the members of the class alike . . . or where the party must treat all alike as a matter of practical necessity." *Amchem*, 521 U.S. at 614. That is true here.

"Most ERISA class action cases are certified under Rule 23(b)(1)." *Coppel v. SeaWorld Parks & Ent., Inc.*, 347 F.R.D. 338, 367 (S.D. Cal. 2024) (citation omitted). Certification under Rule 23(b)(1) is appropriate in ERISA cases "because ERISA requires plan administrators to treat all similarly situated participants in a consistent manner." *Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz. 2008).

In *Moyle*, 823 F.3d at 965 (9th Cir. 2016) the court found that "[p]rosecuting separate actions in this [ERISA] case would have the result of subjecting Liberty Mutual to incompatible standards of conduct." In *Moyle*, Liberty Mutual allegedly made misrepresentations with respect to an ERISA plan on a uniform and classwide basis. *Id*. While some class members relied upon these alleged misrepresentations and "would receive relief while others" did not rely upon them and would not receive relief, the court found this "an argument in favor of class certification" because "Rule 23(b)(1)(A) prevents the prosecution of separate actions that would create the risk of 'inconsistent or varying adjudications ... that would establish incompatible standards of conduct for the party opposing the class.'" *Id*.

As in this case, plaintiffs in *McAlister* alleged that MetLife's pension plan failed to provide JSA benefits that were the actuarial equivalent to the SLA. *McAlister*, 2023 WL 5769491, at *1. The court concluded that class certification was appropriate under Rule 23(b)(1)(A) because "the validity of the assumptions Defendants used in calculating the benefits offered under the Plan – as well as whether another set of assumptions is proper – are issues that apply to the class as a whole." *Id*. at *8. The court further explained that certification under Rule 23(b)(1)(A) was appropriate because, if "two courts came to different conclusions as to how the proposed class members' [Plan] benefits must be calculated, Defendants would face a conflict between treating Plan participants alike and complying with each separate court order." *Id*. (citation omitted).

The *Urlaub* plaintiffs similarly alleged that the defendants failed to pay actuarially equivalent JSA benefits. *Urlaub*, 2024 WL 2209538, at *1. The *Urlaub* court adopted the reasoning of *McAlister* and likewise certified the Class pursuant to Rule 23(b)(1)(A). *Id*. at *6. Like in *Urlaub* and *McAlister*, Defendants are "entitled to consistent rulings regarding operation of the plan, and have a statutory obligation, as well as a fiduciary responsibility, to treat the members of the class alike." *Id*.

Here, separate lawsuits could result in multiple, inconsistent determinations of whether the Plan's formula for calculating JSAs violates ERISA and which actuarial assumptions should be used, and inconsistent adjudications would make it difficult for the Defendants to treat similarly situated participants alike. This is exactly what Rule 23(b)(1)(A) was designed to prevent. *See Bryant*, 2015 WL 300385, at *9 (D. Ariz. Jan. 22, 2015) ("Rule 23(b)(1)(A) 'speaks directly to ERISA suits'") (quoting *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179–80 (S.D.N.Y.2006)).

### 2.    *Rule 23(b)(1)(B)*

The Court can also certify the proposed Class under Rule 23(b)(1)(B). "Rule 23(b)(1)(B) speaks from 'a vantage point within the class, [from which the Advisory Committee] spied out situations where lawsuits conducted with individual members of the class would have the practical if not technical effect of concluding the interests of the other

members as well, or of impairing the ability of the others to protect their own interests.'" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833 (1999).

Here, Plaintiffs seek equitable relief under ERISA § 502(a)(3), including an accounting of the extent to which Defendants have been unjustly enriched by keeping funds which should have been distributed to the proposed class. An adjudication of Defendants' unjust enrichment would as a practical matter be dispositive for all members of the proposed class. *See id*. at 834; *Foster v. Adams & Assocs., Inc.*, No. 18-CV-02723-JSC, 2019 WL 4305538, at *8 (N.D. Cal. Sept. 11, 2019) (finding certification under (b)(1)(B) appropriate because a holding "regarding the legality of … Defendants' actions will affect the rights of all the other [ERISA plan] participants."). For at least this reason, certification under Rule 23(b)(1)(B) is appropriate.

### 3.    Rule 23(b)(2)

Certification is proper under Rule 23(b)(2) when "a single injunction or declaratory judgment would provide relief to each member of the class." *Foster*, 2019 WL 4305538, at *3 (quoting *Dukes*, 564 U.S. at 360). The rule's requirements are "unquestionably satisfied when members of a putative class seek uniform or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Id*. (citing *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014)).

Here, certification is warranted under Rule 23(b)(2) because Defendants use the same actuarial assumptions to calculate each Class member's JSA benefit and Plaintiffs seek a declaration that the Plan's formula violated ERISA. Compl. ¶¶ 90, 101. A Rule 23(b)(2) class is warranted because the relief would apply to all Class members. For example, Plaintiffs seek injunctive relief in the form of an order requiring Defendants to correct and recalculate the benefits. *Alday*, 619 F. Supp. 2d at 736 (certifying class under Rule 23(b)(2) where "Defendant acted or refused to act on grounds applicable to the class, making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole"); *Foster*, 2019 WL 4305538, at *8 (certifying class in ERISA case under Rule 23(b)(2) "Plaintiffs seek the same relief for all members of the class"); *Bryant*,

2015 WL 300385, * 9 (certifying class under (b)(2) in an ERISA case because the "primary remedy sought" was declaratory relief).

### 4. Rule 23(b)(3)

Rule 23(b)(3) requires that (1) "the questions of law or fact common to the class predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3) requires "that questions predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans. & Tr. Funds*, 568 U.S. 455, 459 (2013). When there are common issues that predominate, the case can be certified under Rule 23(b)(3) "even though other important matters will have to be tried separately, such as damages…" *Owen v. Punch Bowl Minneapolis, LLC*, No. 19-CV-955 (NEB/TNL), 2020 WL 8256371, at *6 (D. Minn. July 17, 2020) (quoting *Tyson Foods, Inc. v. Bouaphekeo*, 521 U.S. 591, 623 (2016)). Here, for the same reasons that Rule 23(a)'s commonality requirement is satisfied, the issues of law and fact common to all Class members predominate. *See* Part III.A.2, *supra*.

Rule 23(b)(3) also requires the court to determine "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009) (citing Rule 23(b)(3)). Here, a class action is superior to other available methods. Litigating a single class action is far more efficient than 800 separate suits by individual participants. Moreover, the losses suffered by individual participants and beneficiaries are generally too small for them to initiate individual actions. *Amchem*, 521 U.S. at 617. Indeed, Plaintiffs and their counsel are unaware of any other litigation concerning this controversy. See Rule 23(b)(3)(B). Arizona is also the most efficient and pragmatic forum, since both Pinnacle West is headquartered here and it is where most Class Members reside since Pinnacle West's operational facilities are located in Arizona. *See* Rule 23(b)(3)(C).

Further, this case can be effectively managed as a class action. See Rule 23(b)(3)(D). As discussed above, Plaintiffs seek a wide range of equitable remedies. They seek a declaration that the failure to provide actuarially equivalent JSA benefits violates ERISA, a re-calculation of their benefit amounts and a correction of the amounts of the monthly benefits they are to be paid. As to their past benefits, Plaintiffs seek a declaration that the failure to provide actuarially equivalent JSA benefits violates ERISA, an accounting of past paid benefits, a re-calculation injunction of their past benefit amounts and surcharge for the amounts they were underpaid. This relief can be calculated using a common methodology. Ex. 2, Altman Report, at 27. For example, Altman calculated the amounts that each Class Member would have received if benefits were actuarially equivalent to the SLA, by adding each participant's past monthly shortfalls and calculating the present value of the future shortfalls. *Id.* at 21. Defendants can do the same pursuant to a re-calculation remedy. The proposed Class is certifiable under Rule 23(b)(3).

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully move that the Court certify the proposed Class pursuant to Rule 23(b)(1)(A) or (B), (b)(2) or (b)(3), appoint plaintiffs as class representatives, and pursuant to Rule 23(g), appoint Motley Rice and IKR as Class Counsel and Keller Rohrback L.L.P. as local counsel.

1    Dated: January 17, 2024

2                    Respectfully submitted,

3                    */s/ M. Zane Johnson*

**MOTLEY RICE LLC**
Douglas P. Needham (pro hac vice)
M. Zane Johnson (pro hac vice)
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
860-218-2720
dneedham@motleyrice.com
zjohnson@motleyrice.com

**IZARD, KINDALL & RAABE LLP**
Robert A. Izard (pro hac vice)
Christopher M. Barrett (pro hac vice)
29 South Main Street, Suite 305
West Hartford, CT 06107
(860) 493-6292
rizard@ikrlaw.com
cbarrett@ikrlaw.com

**KELLER ROHRBACK L.L.P.**
Ron Kilgard, Bar No. 005902
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822
rkilgard@kellerrohrback.com

*Attorneys for Plaintiffs*

- 14 -