Ron Kilgard, Bar No. 005902
Keller Rohrback L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822
rkilgard@kellerrohrback.com

*Attorney for Plaintiffs*

[*Additional Counsel on Signature Page*]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jerome M. Skrtich, et al., on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br>v.<br><br>Pinnacle West Capital Corporation, et al.,<br><br>  Defendants. | No. CV-2:22-01753-SMB<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**<br><br>Oral Argument Requested |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT ................................................................................................... 1

    A. The Class is ascertainable using the Pinnacle's records. ..................... 1

    B. The Class is not a fail-safe class. ......................................................... 3

    C. Non-Class Members are not relevant. .................................................. 3

    D. There are no intra-class conflicts ......................................................... 4

    E. Commonality ........................................................................................ 5

    F. Pinnacle's Made-Up Defenses Do Not Defeat Typicality .................... 8

        *1.* Plaintiffs are receiving QJSAs or QOSAs ........................................ 8

        2. Early retirement subsidies are not relevant ................................... 9

    G. Rule 23(b)(1) ........................................................................................ 9

    H. Plaintiffs seek uniform declaratory relief under Rule 23(b)(2). ........ 10

    I. Rule 23(b)(3) ...................................................................................... 11

III. CONCLUSION .............................................................................................. 11

**TABLE OF AUTHORITIES**

**Cases**

*Adams v. U.S. Bancorp*,
 635 F. Supp. 3d 742 (D. Minn. 2022) ................................................................... 3, 6

*Ambrosio v. Progressive Preferred Ins. Co.*,
 No. CV-22-00342-PHX-SMB, 2024 WL 915184 (D. Ariz. Mar. 4, 2024) .............. 1

*Baleja v. Northrop Grumman Space & Missions Sys. Corp.*,
 No. EDCV17235JGBSPX, 2020 WL 3213708 (C.D. Cal. Mar. 26, 2020) ............ 10

*Bally v. State Farm Life Ins. Co.*,
 335 F.R.D. 288 (N.D. Cal. 2020) ............................................................................ 4

*Blackie v. Barrack*,
 524 F.2d 891 (9th Cir. 1975) ................................................................................... 4

*Boggs v. Boggs*,
 520 U.S. 833 (1997) ................................................................................................ 9

*Briseno v. ConAgra Foods, Inc.*,
 844 F.3d 1121 (9th Cir. 2017) ................................................................................. 1

*Bryant v. Arizona Pipe Trades Pension Tr. Fund*,
 No. CV-13-01563-PHX-GMS, 2015 WL 300385 (D. Ariz. Jan. 22, 2015) ........... 10

*Gaston v. LexisNexis Risk Sols., Inc.*,
 483 F. Supp. 3d 318 (W.D.N.C. 2020) .................................................................... 7

*Guadiana v. State Farm Fire & Cas. Co.*,
 No. CIV07-326 TUC-FRZ-GEE, 2009 WL 6325542 (D. Ariz. Dec. 18, 2009),
 *report and recommendation adopted*,
 2010 WL 1335626 (D. Ariz. Mar. 31, 2010) .......................................................... 4

*Gustafson v. Goodman Mfg. Co. LP*,
 No. CV-13-08274-PCT-JAT, 2016 WL 1029333 (D. Ariz. Mar. 16, 2016) ............ 2

*Hamrick v. E.I. du Pont de Nemours & Co.*,
 No. CV 23-238-JLH, 2024 WL 359240 (D. Del. Jan. 31, 2024),

*report and recommendation adopted*,

    2024 WL 2817966 (D. Del. June 3, 2024) .................................................................................. 8

*In re Arizona Theranos, Inc. Litig.*,

    No. CV-16-2138-HRH, 2020 WL 5435299 (D. Ariz. Mar. 6, 2020) ....................... 2

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,

    2017 WL 1273963 (S.D.N.Y. Mar. 31, 2017) ........................................................ 5

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Pracs. & Prod. Liab. Litig.*,

    No. MDL 10-02172-CJC, 2012 WL 4904412 (C.D. Cal. Sept. 20, 2012) ............... 5

*Kamar v. RadioShack Corp.*,

    375 F. App'x 734 (9th Cir. 2010) ........................................................................... 3

*Karim v. Hewlett-Packard Co.*,

    2014 WL 555934 (N.D. Cal. Feb. 10, 2014) ........................................................... 7

*Little v. Grand Canyon Univ.*,

    No. CV-20-795-PHX-SMB, 2022 WL 266726 (D. Ariz. Jan. 28, 2022) ................. 2

*Lytle v. Nutramax Lab'ys, Inc.*,

    114 F.4th 1011 (9th Cir. 2024) .............................................................................. 7

*McAlister v. Metro. Life Ins. Co.*,

    No. 18-CV-11229 (RA), 2023 WL 5769491 (S.D.N.Y. Sept. 7, 2023) ........... passim

*Olean Wholesale Groc. Cooperative, Inc. v. Bumble Bee Foods LLC*,

    31 F.4th 651 (9th Cir. 2022) ........................................................................... passim

*Probe v. State Teachers' Retirement Sys.*,

    780 F.2d 776 (9th Cir. 1986) ................................................................................ 10

*Ruiz Torres v. Mercer Canyons, Inc.*,

    835 F.3d 1125 (9th Cir. 2016) ................................................................................ 2

*Sali v. Corona Regional Medical Center*,

    909 F.3d 996 (9th Cir. 2018) .................................................................................. 4

*Stockwell v. City & Cnty. of San Francisco*,

    749 F.3d 1107 (9th Cir. 2014) ................................................................................ 7

*Thorne v. U.S. Bancorp*,
   2021 WL 1977126 (D. Minn. May 18, 2021) ....................................................... 5, 10

*Torres v. American Airlines*,
   2020 WL 3485580 (N.D. Tex. May 22, 2020) ..................................................... 5, 10

*Unknown Parties v. Johnson*,
   163 F.Supp.3d 630 (D. Ariz. 2022) ........................................................................... 2

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
   No. 815CV1614JLSJCGX, 2017 WL 2655678 (C.D. Cal. June 15, 2017) .............. 4

*Urlaub v. CITGO Petroleum Corp.*,
   348 F.R.D. 319 (N.D. Ill. 2024) ........................................................................ passim

*Urlaub v. CITGO Petroleum Corp.*,
   No. 21 C 4133, 2022 WL 523129 (N.D. Ill. Feb. 22, 2022) ..................................... 9

*Vogt v. State Farm Life Ins. Co.*,
   963 F.3d 753 (8th Cir. 2020) .................................................................................... 4

*Winters v. Loan Depot LLC*,
   No. CV-20-01290-PHX-SPL, 2022 WL 22865378 (D. Ariz. Mar. 17, 2022) .......... 7

**Statutes**

Federal Rule of Civil Procedure 23(b)(2) ............................................................................ 10

- v -

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR CLASS CERTIFICATION
CASE NO. CV-2:22-01753-SMB

## I. INTRODUCTION

Pinnacle asserts essentially three objections to class certification. First, the argument that the class is not ascertainable fails because Plaintiffs' expert attached a list of each Class member to his report. Second, relief in this case does not require an individualized assessment for each Class member because Plaintiffs use the same formula for each Class member. Finally, Pinnacle's objections are speculations on what could happen if the Court disagrees with Plaintiffs on the merits. Pinnacle's objections fail as demonstrated by *Urlaub v. CITGO Petroleum Corp.*, 348 F.R.D. 319 (N.D. Ill. 2024) and *McAlister v. Metro. Life Ins. Co.*, No. 18-CV-11229 (RA), 2023 WL 5769491 (S.D.N.Y. Sept. 7, 2023). *See* Opening Brief, ECF 62. *Urlaub* certified a nearly identical class which contained only individuals who received less than the actuarial equivalent as determined by Ian Altman, Plaintiffs' expert in this case. 348 F.R.D. at 328-29. *McAlister* certified a similar class of participants receiving certain benefit forms. 2023 WL 5769491 at * 9.

## II. ARGUMENT

### A. The Class is ascertainable using the Pinnacle's records.

The Class is ascertainable because membership can be (and has been) objectively determined. Altman calculated the amount that would provide an actuarially equivalent joint and survivor annuity ("JSA") to each Class Member. ECF 62 at 3; ECF 62-2; ECF 62-3.[1] Plaintiffs identified 873 proposed Class members and Altman attached a list of Class members to his report.[2] *Ambrosio v. Progressive Preferred Ins. Co.*, No. CV-22-00342-PHX-SMB, 2024 WL 915184 *3 (D. Ariz. Mar. 4, 2024) (class "ascertainable because, based on expert opinion, '[e]very criterion for membership—insured by Progressive, date of loss, whether [the loss] was a covered claim…can objectively be pulled from Progressive's records."); *In re Arizona Theranos, Inc. Litig.*, No. CV-16-2138-HRH, 2020

---

[1] The Ninth Circuit has not "adopted an 'ascertainability' requirement." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124-25 n.4 (9th Cir. 2017).

[2] The proposed Class period covers Plan participants who started receiving their benefits from November 2016 "until the date of judgment." Altman can perform the calculation again for any individuals not covered by the Class Data.

1  WL 5435299, * 11 (D. Ariz. Mar. 6, 2020) ("administratively feasible way to identify class
2  members" using "records of Walgreens and Theranos").

3       Pinnacle complains that the Class definition does not specify 1) whether the actuarial
4  equivalence calculation should be calculated as of benefit commencement date ("BCD") or
5  normal retirement age ("NRA"); 2) the method used to round the ages of participants and
6  beneficiaries, and 3) the gender blend used in the mortality assumption. ECF 64 ("Opp.")
7  at 9-10. But Pinnacle knows these details. Altman specified them in his Report and during
8  his deposition. Altman Tr., ECF 65-1 at Ex. E, 149:19-23 (gender blend); 239:8-17 (SLA
9  at BCD); Ex. A at 231:12-23 (age rounding).[3] Accordingly, the court can determine "whom
10 will be bound by the judgment." *Gustafson v. Goodman Mfg. Co. LP*, No. CV-13-08274-
11 PCT-JAT, 2016 WL 1029333, * 6 (D. Ariz. Mar. 16, 2016).

12      While Pinnacle now argues that the JSA should be compared to the SLA that would
13 be offered at Plan's normal retirement age, rather than BCD, that issue concerns the merits
14 of Plaintiffs' case.[4] The only issue now is whether the Class definition is entirely consistent
15 with Plaintiffs' theory of liability, which compares the JSA to the SLA offered to
16 participants at BCD.[5]  It is.

---

[3] Pinnacle's expert, Thomas Terry, was not confused. *See* Terry Rebuttal, ECF 65-3, Ex. K at ¶ 36(b), p.14 (SLA at BCD), ¶ 79, p.23 (gender blend), ¶ 122, p.32 (age rounding).

[4] As to the merits. Plaintiffs bring claims under 29 U.S.C. 1055(d), which requires JSAs be actuarially equivalent to the SLA offered to participants at their benefit commencement date. Am. Compl., ECF 17 at ¶ 1. Contrary to its current position, Pinnacle acknowledged that is the correct analysis at the motion to dismiss stage, ECF 19 at 5 (discussing "the actuarial assumptions used by the Plan to convert a single life annuity to Plaintiffs' JSAs"), and during discovery. ECF 45 at 2-3 and ECF 50 at 2 (same). The Parties' experts also understand that Plaintiffs' claims concern the comparison of the JSA to the SLAs at BCD. Altman Report, ECF 63-2 at ¶¶ 1(b), 7; Terry Report, ECF 65-1 at 42, ¶ 28.

[5] If the Class definition needs to be refined, and Plaintiffs do not believe that it does, the Court should not deny certification because "the better course is not to deny class certification entirely but to amend the class definition." *Ruiz Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1139 (9th Cir. 2016); *see also Olean Wholesale Groc. Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022)  ("over-inclusive class can and often should be solved by refining the class definition rather than flatly denying certification"); *Little v. Grand Canyon Univ.*, No. CV-20-795-PHX-SMB, 2022 WL 266726, at * 4 (D. Ariz. Jan. 28, 2022) ("deficiency in the definition can be fixed with a simple modification"); *Unknown Parties v. Johnson*, 163 F.Supp.3d 630, 646 (D. Ariz. 2022). In any event, the below revisions to the Class definition would cure the purported ambiguities:

### B. The Class is not a fail-safe class.

A fail-safe class exists "when the class itself is defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010). A fail-safe class is "improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Olean*, 31 F.4th at 669 n.14. Here, "membership does not depend on the Court's finding of liability;" rather "membership is based on objective criteria—present value calculations—that require no legal analysis." *Adams v. U.S. Bancorp*, 635 F. Supp. 3d 742, 758 (D. Minn. 2022) (rejecting fail safe argument in case alleging failure to provide actuarial equivalence pension benefits). Contrary to Defendants' arguments, Opp. at 10,14, if the Court does not accept Plaintiffs' theory of liability, Class members will still have their claims adjudicated and be bound by the outcome. They will just not prevail on their claims.

### C. Non-Class Members are not relevant.

Pinnacle objects to the exclusion of participants receiving an 'Over/Under' benefit. Opp. at 8, 16. But none of Plaintiffs elected Over/Under benefits and, the Plan calculates that benefit differently from standard JSAs as Defendants' expert explained. Terry Report, ECF 65-3 at 47. Accordingly, participants with these benefits may be excluded from the Class. *McAlister*, 2023 WL 5769491 at * 6-7 (court certified class that excluded participants with "a different benefit structure" and court rejected argument that the class was too narrow, concluding that class did not need to include all plan participants); s*ee also*

---

All participants and beneficiaries of the Plan who began receiving a JSA after November 1, 2016 whose monthly JSA benefit would be greater if calculated <u>from the participant's SLA benefit</u> using the Applicable Mortality Table as defined in Internal Revenue Code § 417(e)(3)(B) in the year of the participant's Benefit Commencement Date<u>, rounding ages to the nearest month, and with a gender blend 75% male for participants and 75% female for beneficiaries,</u> and the Applicable Interest Rate as defined in Internal Revenue Code § 417(e)(3)(C) from the October of the year preceding the participant's Benefit Commencement Date.

Excluded from the Class are Plan participants receiving an "Over/Under" form of payment under § 6.7 of the Plan, Defendants, and any individuals who are subsequently to be determined to be fiduciaries of the Plans.

1  *Guadiana v. State Farm Fire & Cas. Co.*, No. CIV07-326 TUC-FRZ-GEE, 2009 WL 6325542, at *9 (D. Ariz. Dec. 18, 2009), *report and recommendation adopted*, 2010 WL 1335626 (D. Ariz. Mar. 31, 2010) (issue that related to individuals excluded from class is moot). Indeed, had Plaintiffs included the Over/Under' benefit, Pinnacle would have undoubtedly argued that the Class was over inclusive. Pinnacle even acknowledges that those individuals may bring their own lawsuits if they wish to do so. Opp. at 16.

### D.  There are no intra-class conflicts

Pinnacle's argument that some Class members may want to pursue different actuarial assumptions, Opp. at 13, 16-17, fails because ***all*** Class members have been harmed. A "slight divergence is greatly outweighed by shared interests in establishing [defendant's] liability." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 768 (8th Cir. 2020) (discussing slight divergence from differing mortality assumptions); *Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 303 (N.D. Cal. 2020) (actuarial model might benefit some class members more than others depending on mortality rates used). That is because courts generally decline "to consider conflicts, particularly as they regard [the method of calculating] damages, sufficient to defeat class action status." *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975); *Sali v. Corona Regional Medical Center*, 909 F.3d 996, 1011 (9th Cir. 2018) (individual questions do not predominate when "each class member was injured in precisely the same manner," even if the amount varies). Courts do not consider conflicts at the class certification stage "unless the conflict is apparent, imminent, and on an issue at the very heart of the suit." *Blackie*, 524 F.2d at 909.

Ultimately, whether a conflict exists "necessarily depends on what type of relief is ultimately awarded by the Court." *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 815CV1614JLSJCGX, 2017 WL 2655678, at *5 (C.D. Cal. June 15, 2017). Plaintiffs seek injunctive and declaratory relief to require Pinnacle to provide the Class with actuarially equivalent JSAs, relief that Pinnacle wrongly suggests could reduce Class members' benefits. Not so. ERISA's actuarial equivalence requirement is a floor, not a ceiling. If Plaintiffs do not prevail, it will mean the Court found Pinnacle has satisfied ERISA's

requirement. It does not follow that the Plaintiffs would have to return money or would have their benefits reduced.

### E. Commonality

Pinnacle contends, without any support, that Altman's analysis is "dubious and highly doubtful on several disputed *merits* issues" Opp. at 2. (emphasis added). But courts do not need "to resolve factual disputes regarding ultimate issues on the merits" at the certification stage. *Olean*, 31 F.4th at 667. "Resolving such issues would put the cart before the horse by requiring plaintiffs to show at certification they could prevail on their claims." *Id*. (quotations omitted). Accordingly, Altman's analysis should be accepted for purposes of this motion. *See In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Pracs. & Prod. Liab. Litig*., No. MDL 10-02172-CJC, 2012 WL 4904412, at *4 (C.D. Cal. Sept. 20, 2012).

Pinnacle's argument that the Class "likely includes" participants who were not harmed, Opp. at 10, makes no sense because the Class is defined to consist only of class members who suffered a loss under Plaintiffs' theory. Indeed, the Ninth Circuit favors excluding "fortuitously non-injured subset of class members" and cautions that "a potentially 'over-inclusive' class 'can and often should be solved by refining the class definition.'" *Olean*, 31 F.4th at 669, 669-670 n.14. Pinnacle's disagreement with Plaintiffs' theory does not mean the class should not be certified. Rather, if Pinnacle is correct, then some (or all) of the Class would not prevail on their claims.

The Class here is materially identical to the classes certified in *Urlaub*, 348 F.R.D. 319 and *McAlister*, 2023 WL 5769491; *see also In re J.P. Morgan Stable Value Fund ERISA Litig.,* 2017 WL 1273963 *3-4, 12 (S.D.N.Y. Mar. 31, 2017) (certifying classes of participants in ERISA case whose "investment underperformed the Hueler Index or similar objective benchmark" because "class members will be readily identifiable as having underperformed the objective benchmark or not.").

As Pinnacle effectively concedes, Opp. at 11, *Thorne v. U.S. Bancorp*, 2021 WL 1977126, at *2 (D. Minn. May 18, 2021) and *Torres v. American Airlines*, 2020 WL 3485580, at *12 (N.D. Tex. May 22, 2020), are not relevant because the proposed classes

included participants who did not suffer a loss.[6] Moreover, even if the proposed Class here included uninjured individuals (and it does not), a certified class may include uninjured class members in this Circuit. *Olean*, 31 F.4th at 669. While Pinnacle argues that there are a range of reasonable assumptions. Opp. at 11, whether actuaries must use a range is a merits questions this Court should not resolve at the certification stage. *Olean*, 31 F.4th at 667.[7] For example, in *Urlaub,* the court certified the class in an actuarial equivalence case when "the defendants' expert has opined that the SLA-to-JSA conversion factor was within a reasonable range for all class members, while the plaintiffs' expert has opined it was not." *Urlaub*, 348 F.R.D. at 323. While the Court may or may not ultimately adopt the assumptions that Plaintiffs' expert selected, certification is proper because all Class members have a common claim. *Olean*, 31 F.4th at 667-78.

In a variation on to its "range" argument, Pinnacle speculates that *if* actuarial equivalence is measured by the assumptions Pinnacle uses for financial reporting purposes, then "over 22% of the proposed class would not have suffered an injury." Opp. at 12. But Altman did not measure actuarial equivalence using Pinnacle's financial reporting assumptions. So, at bottom, Pinnacle is arguing that Altman could have chosen different assumptions and, if he had, there would be different results. These merits arguments are not for class certification. Doubling down on the "range" argument, Pinnacle claims that "there are at least 15 ways to apply" discount rate assumption Altman selected. Opp. at 13. But as Pinnacle's expert admitted, Altman had to pick one of the 15 ways. Terry Dep., 35-39. And, contrary to Pinnacle's suggestion, Altman's selection was not arbitrary. Opp. at 7. He used ***the same methodology as the Plan*** — the October rates and a one-year stabilization period. *Urlaub* rejected the same argument, finding that plaintiffs' expert's (Altman's) use of the

---

[6] In a successive action against U.S. Bancorp raising the same claims, the court denied defendants' motion to strike class allegations because the class was defined to include only those who were injured. *See Adams*, 635 F. Supp. 3d at 758.

[7] Although not relevant, Altman's use a single discount rate and mortality assumption was proper on the merits. The Tax Code and ERISA requires benefit formulae to be "definitely determinable" and set forth in the plan document. *See* 26 U.S.C. § 401(a)(25) and 29 U.S.C. § 1102(b)(4). In other words, plan sponsors cannot calculate benefits using a "range."

same method stability period and lookback month was "a logical reason" for the selection. *Urlaub*, 348 F.R.D. at 327.[8] In any event, membership is fixed based on the Class definition.

Pinnacle's speculation about how "minor tweaks" would affect Plan participants, Opp. at 11-12, is not relevant.[9] Changing any element of a class definition will affect who is in the Class. If Pinnacle's argument were true, no class action could ever be certified because a defense expert could always create an alternative assumption or factor that would affect class members differently.[10] *Gaston v. LexisNexis Risk Sols., Inc*., 483 F. Supp. 3d 318, 334 (W.D.N.C. 2020) (rejecting argument and observing: "if Defendants' arguments prevailed no class of clearly wronged individuals could ever be certified"). In any event, whether the Plan provides actuarial equivalent benefits is a common question capable of class-wide resolution. *Olean*, 31 F.4th at 666-67. If the Court does not accept the assumptions Altman used (or makes "minor tweaks"), Opp. at 12, the Class definition does not change. The Court will still decide the claims. While the Class might exclude individuals who were harmed, Opp. at 12, those participants can bring their own cases based on collateral estoppel.[11] This Court should not consider non-class members in ruling on this motion.

Defendants admit that Altman used a 75% male / 25% female blend, so the hypothetical scenarios concocted to defeat commonality using a different gender blend

---

[8] In *McAlister*, Plaintiffs' expert used a different lookback month for the 417(e) rates because, like here, he used the ones selected by the sponsor. *See* Opp. at 12, n.4.

[9] *Karim v. Hewlett-Packard Co.*, 2014 WL 555934, at *7 (N.D. Cal. Feb. 10, 2014) ("the court finds that hypothetical defenses cannot be enough to defeat commonality."); *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1114 n.3 (9th Cir. 2014) ("The availability of such [individualized affirmative] defenses ... is not pertinent to the commonality question, as long as there is a common question as to the [plaintiffs'] prima facie case....") (emphasis in original).

[10] In *Lytle v. Nutramax Lab'ys, Inc*., 114 F.4th 1011, 1032 n.8 (9th Cir. 2024) (Opp. at 13), the Court held that "plaintiffs may rely on a reliable though not-yet-executed damages model to demonstrate that damages are susceptible to common proof." Here, Altman executed a reliable damages model.

[11] In *Winters v. Loan Depot LLC*, No. CV-20-01290-PHX-SPL, 2022 WL 22865378, at *7 (D. Ariz. Mar. 17, 2022), the court held the class definition was "fail safe" because it required a "legal conclusion" to determine class membership. Here, in stark contrast, the class is defined by objective criteria and does not require a legal conclusion to determine its membership.

1   likewise fail. Opp. at 13. are not worth much. *Id.*; *see also* Altman Report at 17. While Class
2   definition does not expressly state the gender blend, the Court can refine the definition to
3   the extent necessary. *See* above at 2 n.5.

### F. Pinnacle's Made-Up Defenses Do Not Defeat Typicality

#### *1.* **Plaintiffs are receiving QJSAs or QOSAs**

This Court has already rejected Pinnacle's argument that ERISA § 205 does not protect the Plan's 100% JSA, Opp. at 15, twice - in its Order denying Pinnacle's motion to dismiss, ECF No. 29 at 6-7, and in its Order denying Pinnacle's motion for reconsideration. ECF No. 41 at 2. Nothing has changed to affect the Court's prior rulings.[12]

Pinnacle wrongly contends that it told Skrtich and Riccitelli their benefits were not QJSAs, and that their spouses signed consent forms for this reason. Opp. at 5. Skrtich and Riccitelli took their traditional benefits as JSAs and their RAB benefits as lump sums. See Answer, ECF 33 at ¶¶ 13, 15. Their spouses signed consent forms due to the lump sums. Plan § 6.8 at 52 (spousal consent required if married participant with RAB benefit elects to receive lump sum). If Pinnacle was correct that spousal consent is required for any 100% JSA, Peck's spouse would have been required to sign a consent form.

As Pinnacle mentions, 515 of the Class's 873 members are receiving a 100% JSA form. Opp. at 15. Any arguments that Pinnacle makes concerning the 100% JSA that this Court has not already rejected are far from "unique," and could be decided on a class-wide basis. *McAlister*, 2023 WL 5769491, * 7-8 (certifying a sub-class for those that signed releases); *Urlaub*, 348 F.R.D. at 323 (certifying a sub-class for those that started receiving their benefits before a certain date).

Pinnacle also contends that Riccitelli's 50% JSA is not a QJSA because he received a separate lump sum for his RAB benefit. Opp. at 15. Plans may separate a benefit into

---

[12] Since those decisions, another court has issued a ruling that supports Plaintiffs' positions. *See Hamrick v. E.I. du Pont de Nemours & Co.*, No. CV 23-238-JLH, 2024 WL 359240, at *3 (D. Del. Jan. 31, 2024), *report and recommendation adopted*, 2024 WL 2817966 (D. Del. June 3, 2024) ("29 U.S.C. § 1055 does not support such a restrictive reading, particularly when that provision states that the QJSA 'also includes *any annuity* in a form having the effect of an annuity described' in 29 U.S.C. § 1055(d)(1)." (emphasis in original)).

separate parts and offers participants the option to receive part of a benefit as a lump sum. 26 C.F.R. § 1.417(e)-1(d)(7). When a participant elects a partial lump sum, the distribution "settles" that portion of the benefit. The remaining portion is determined by the plan's other provisions, subject to ERISA's requirements. *Id.* at Example 1. Pinnacle's merger of Riccitelli's RAB lump sum and 50% JSA is contrary to the Plan's terms and how ERISA treats partial lump sums. In any event, because this is not a material disputed issue, it does not defeat typicality.

### 2. Early retirement subsidies are not relevant

Pinnacle contends that Plaintiffs are subject to a unique defense because they are receiving subsidized early retirement benefits." Opp. at 16.[13] But Pinnacle cites no authority, presumably because ERISA § 205 requires that the "accrued amount ***payable***" be a QJSA. 29 U.S.C. § 1055(a), (d).[14] Consequently, for retirees who retire early, the JSA must be the actuarial equivalent of the SLA that is payable early — i.e., the subsidized SLA. This ensures that a spouse receives a benefit that is actuarially equivalent to the benefit available to a single participant on the date of retirement, regardless of whether those benefits are early or subsidized. *Boggs v. Boggs*, 520 U.S. 833, 843-44 (1997); *Urlaub v. CITGO Petroleum Corp.*, No. 21 C 4133, 2022 WL 523129, *5 (N.D. Ill. Feb. 22, 2022). Pinnacle is again trying to manufacture a legal dispute where none exists. The Class Satisfies Each Requirement of Rule 23(b)

### G. Rule 23(b)(1)

The Class contains only those individuals who allege the "same ERISA violations" and would "be entitled to the same type of" injunctive relief. *Bryant v. Arizona Pipe Trades Pension Tr. Fund*, No. CV-13-01563-PHX-GMS, 2015 WL 300385, at *9 (D. Ariz. Jan.

---

[13] Dkt. 19 at 8 & n. 2 simply correctly notes that Plaintiffs did not bring a claim for underpaid early retirement benefits.

[14] The term "payable" in § 1055(a) means the amount the plan "is under an obligation to pay." *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 542 (6th Cir. 2003). Combined, §§ 1055(a) and (d) require that the participant's QJSA be the actuarial equivalent of the SLA available on the annuity start date which, in this case, was early. *Masten*, 543 F. Supp. 3d at 29.

22, 2015). Defendants' reliance on *Torres* and *Thorne,* Opp. at 16, is misguided. The plaintiffs in *Torres* sought "reforming the definition of 'Actuarial Equivalent' in the Plans," and found that certain class members would be harmed by the reformed definition. *Torres*, 2020 WL 3485580 at * 11. Plaintiffs here do not seek to reform the Plan. Similarly, the plaintiffs in *Thorne* found that "some potential class members' benefits would decrease" if the plaintiffs received the relief sought. *Thorne*, 2021 WL 1977126 at *2. Here, all Class members' benefits would increase. In addition, the plaintiffs in *Torres* and *Thorne* supplied multiple models for damages, none of which would benefit all class members. 2020 WL 3485580 at * 12; 2021 WL 1977126 at *2. Here, Plaintiffs supplied a single model that would increase all Class members' benefits. Pinnacle's speculation that "certain Plan participants would fare worse" is wrong. No participants will fare worse; uninjured participants benefits will not change.

### H. Plaintiffs seek uniform declaratory relief under Rule 23(b)(2).

Plaintiffs seek a declaration and an injunction requiring that ***all*** Class member benefits be re-calculated. Rule 23(b)(2) is "unquestionably satisfied when members of a putative class seek uniform or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Foster*, 2019 WL 4305538, at *3. Defendants' argument that monetary relief is "integral," Opp. at 17, is contrary to *Probe v. State Teachers' Retirement Sys.,* 780 F.2d 776, 780 (9th Cir.1986). In *Probe*, the plaintiffs "primary claim for injunctive relief [sought] to prohibit the use of sex-based mortality tables" to calculate annuity payments. *Id*. The damages plaintiffs requested were "merely incidental" to the primary claim. *Baleja v. Northrop Grumman Space & Missions Sys. Corp.*, No. EDCV17235JGBSPX, 2020 WL 3213708, at *6 (C.D. Cal. Mar. 26, 2020); *Urlaub*, 348 F.R.D. at 328. Defendants' argument that some "putative class members were not injured," Opp. at 16-17, is wrong because uninjured participants are not Class members. *See* § II.D, above.

## I.     Rule 23(b)(3)

Pinnacle's argument "individual circumstances (i.e. age, benefit commencement date, benefit type, etc.) as well as the particular yardstick" used to measure actuarial equivalence predominate fails. Opp. at 17. The question at class certification is whether Plaintiffs have proposed a workable model" not whether Defendants "agree it is the correct one." *McAlister*, 2023 WL 5769491, at *5. Here, the undisputed individual circumstances are just variables input into a common mathematical model. Not only are "damages … capable of measurement on a classwide basis," Opp. at 17, Plaintiffs' expert has measured them. Pinnacle's speculation that Class members might prefer different assumptions fails for the reasons set forth in Part II.D above.

## III.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully move that their Motion be granted.

| | | |
|---|---|---|
| 1 | Dated: January 17, 2024 | Respectfully submitted, |
| 2 | | */s/ M. Zane Johnson* |
| | | **MOTLEY RICE LLC** |
| 3 | | Douglas P. Needham (pro hac vice) |
| | | M. Zane Johnson (pro hac vice) |
| 4 | | One Corporate Center |
| | | 20 Church Street, 17th Floor |
| 5 | | Hartford, CT 06103 |
| | | 860-218-2720 |
| 6 | | dneedham@motleyrice.com |
| | | zjohnson@motleyrice.com |

**IZARD, KINDALL & RAABE LLP**
Robert A. Izard (pro hac vice)
Christopher M. Barrett (pro hac vice)
29 South Main Street, Suite 305
West Hartford, CT 06107
(860) 493-6292
rizard@ikrlaw.com
cbarrett@ikrlaw.com

**KELLER ROHRBACK L.L.P.**
Ron Kilgard, Bar No. 005902
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822
rkilgard@kellerrohrback.com

*Attorneys for Plaintiffs*