Ron Kilgard, Bar No. 005902
Keller Rohrback L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822
rkilgard@kellerrohrback.com

*Attorney for Plaintiffs*

[*Additional Counsel on Signature Page*]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jerome M. Skrtich, et al., on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>Pinnacle West Capital Corporation, et al.,<br><br>        Defendants. | No. CV-2:22-01753-SMB<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT** |

# TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................1

II.     BACKGROUND ................................................................................2

III.    PROCEDURAL BACKGROUND ....................................................3

IV.     TERMS OF THE PROPOSED SETTLEMENT ...............................5

    A.      Class...........................................................................................5

    B.      Plan Amendment ......................................................................5

    C.      Calculation of Monthly Benefit Increases...............................5

    D.      Timing of Benefit Increase ......................................................6

    E.      Calculation of Benefits Upon the Death of a Participant Class Member ....6

    F.      Release .......................................................................................7

    G.      Notice and Administration ......................................................7

V.      ARGUMENT ....................................................................................7

    A.      The Settlement Merits Preliminary Approval.................................8

        1.      *Standard for Preliminary Approval* ..........................................8

        2.      *The Proposed Settlement Was the Product of Arm's Length Negotiations 8*

        3.      *The Settlement has no "Obvious Deficiencies" .........................10*

        4.      *The Settlement Treats All Class Members Equitably ...............11*

        5.      *The Relief Obtained is Well Within the Reasonable Range ...............12*

    B.      The Class Should Be Preliminarily Certified for Settlement Purposes .....13

*1.      Satisfies Rule 23(a)'s Requirements.* .........................................*13*

*2.      The Class Satisfies the Requirements of Rule 23(b)(1) and (b)(2).* ..........*16*

**C.      The Proposed Notice to Class Members is Adequate** ...................................**18**

**VI.      PROPOSED SCHEDULE** ...................................................................**19**

**VII.      CONCLUSION** ..............................................................................**20**

1
## TABLE OF AUTHORITIES

2 **Cases**

3 *Adams v. U.S. Bancorp,*

4     No. 22-cv-509, Dkt. 173 (D. Minn. April 4, 2025)........................................................ 12

5 *Alday v. Raytheon Co.,*

6     619 F. Supp. 2d 726 (D. Ariz. 2008)............................................................... 17, 18

7 *Amchem Prod., Inc. v. Windsor,*

8     521 U.S. 591 (1997)........................................................................................ 16

9 *Armstrong v. Davis,*

10     275 F.3d 849 (9th Cir. 2001).......................................................................... 14

11 *Arrison v. Walmart Inc.,*

12     No. CV-21-00481, 2024 WL 3413968 (D. Ariz. July 15, 2024) (Brnovich, J.)................. 8

13 *Beach v. JPMorgan Chase Bank, Nat'l Ass'n,*

14     No. 17-cv-00563 (S.D.N.Y. May 20, 2020) ....................................................... 13

15 *Berube v. Rockwell Automation, et al,*

16     Case No. 2:20-CV-01783 (E.D. Wis. Mar. 8, 2024)............................................. 2

17 *Bryant v. Arizona Pipe Trades Pension Trust Fund,*

18     No. CV-13-1563, 2015 WL 300385, at *7 (D. Ariz. Jan. 22, 2015) ......................... 15

19 *Coppel v. SeaWorld Parks & Ent., Inc.,*

20     347 F.R.D. 338 (S.D. Cal. 2024)....................................................................... 17

21 *Cruz v. Raytheon,*

22     No. 19-11425 (D. Mass. June 11, 2021) ............................................................ 2

23 *Deaver v. Compass Bank,*

24     No. 13-cv-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015)........................... 13

25 *Drummond v. Southern Container Co.,*

26     No. 24-12773 (11th Cir. Aug. 28, 2024)............................................................ 1

27 *Herndon v. Huntington Ingalls Industries, et al,*

28     No. 4:19CV52 (RCY) (E.D. Va. May 10, 2022) ................................................ 10

*Holloway et al. v. Kohler Co. et al*,

     Case No. 2:23-cv-01242 (E.D. Wis. Dec. 12, 2024).............................................................. 2

*In re Apple Inc. Device Performance Litig.*,

     50 F.4th 769 (9th Cir. 2022)............................................................................................... 8

*In re Arizona Theranos, Inc., Litig.*,

     No. 2:16-CV-2138, 2020 WL 5435299 (D. Ariz. Mar. 6, 2020)...................................... 16

*In re Bluetooth Headsets Prods. Liab. Litig.*,

     654 F.3d 935 (9th Cir. 2011))............................................................................................. 9

*In re Hyundai & Kia Fuel Econ. Litig.*,

     926 F.3d 539 (9th Cir. 2019)............................................................................................... 7

*In re Mego Fin. Corp. Sec. Litig.*,

     213 F.3d 454 (9th Cir. 2000)............................................................................................. 13

*In re Online DVD-Rental Antitrust Litig.*

     779 F.3d 934 (9th Cir. 2015)............................................................................................. 11

*In re Tableware Antitrust Litig.*,

     484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................................... 12

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,

     2018 WL 2183253 (N.D. Cal. May 11, 2018) ................................................................. 13

*Linney v. Cellular Alaska P'ship*,

     151 F.3d 1234 (9th Cir.1998)............................................................................................ 12

*McAlister v. Metro. Life Ins. Co.*,

     No. 18-CV-11229, 2023 WL 5769491 (S.D.N.Y. Sept. 7, 2023)...................................... 17

*McClure v. State Farm Life Ins. Co.*,

     341 F.R.D. 242 (D. Ariz. 2022) .................................................................................. 14, 15

*McFadden, et al, v. Sprint Communications, LLC*,

     Case No. 22-2464, Dkt. 46 (D. Kan. Aug. 21, 2024)......................................................... 2

*McKinney-Drobnis v. Oreshack*,

     16 F.4th 594 (9th Cir. 2021).............................................................................................. 10

*Ortega-Melendres v. Arpaio*,

 836 F. Supp. 2d 959 (D. Ariz. 2011)..................................................... 14

*Parsons v. Ryan*,

 754 F.3d 657 (9th Cir. 2014)............................................................... 18

*Phillips Petroleum Co. v. Shutts*,

 472 U.S. 797 (1985)............................................................................. 19

*Prince v. Eaton Vance Corp*.,

 No. 18-12098 (D. Mass Sept. 24, 2019) .............................................. 13

*Reichert v. Kellog Co.*, 24-1442

 (6th Cir. May 17, 2024) ......................................................................... 1

*Roe v. Jose Torres L.D. Latin Club Bar, Inc.*,

 No. 19-CV-06088, 2020 WL 5074392 (N.D. Cal. Aug. 27, 2020) .................. 13

*Salazar v. Driver Provider Phoenix LLC*,

 No. CV-19-05760, 2024 WL 2923718 (D. Ariz. June 10, 2024)

 (Brnovich, J.)................................................................... 9, 10, 11, 12

*Saliba v. KS Statebank Corp.*,

 No. CV-20-00503, 2021 WL 2105608 (D. Ariz. May 25, 2021) ............................... 14, 15

*Sims v. BB&T Corp*.,

 No. 15-732, 2019 WL 1993519 (M.D.N.C. May 6, 2019) ................................ 13

*Smart v. Nat'l Collegiate Athletic Ass'n*,

 No. 2:22-CV-02125, 2025 WL 1248794 (E.D. Cal. Apr. 30, 2025) ...................... 10

*Toomey v. Demoulas Super Markets, Inc.*,

 No. 1:19-cv-11633 (D. Mass. Mar. 24, 2021)..................................... 13

*Urakhchin v. Allianz Asset Mgmt. of Amer., L.P.*,

 No. 15-1614, 2018 WL 8334858 (C.D. Cal. July 30, 2018)............................ 13

*Urlaub et al v. Citgo Petroleum Corp. et al.*,

 Civil Action No. 21-cv-4133, Dkt. No 175 (N.D. Ill. Jan. 27, 2025) ................... 2

PLAINTIFFS' PRELIMINARY MOTION
FOR SETTLEMENT APPROVAL
CASE NO. CV-2:22-01753-SMB

1  *Urlaub v. CITGO Petroleum Corp.*,

2       348 F.R.D. 319 (N.D. Ill. 2024) ............................................................... 12, 15, 17

3  *Velazquez v. Massachusetts Fin. Services Co.*,

4       No. 17-11249 (D. Mass Dec. 5, 2019) .............................................................. 13

5  *Watt v. FedEx Co.*, No. 24-5945

6       (6th Cir. Oct. 17, 2024) .................................................................................... 1

7  *Zwicky v. Diamond Resorts Mgmt. Inc.*,

8       343 F.R.D. 101 (D. Ariz. 2022) ............................................................. 8, 10, 11

9  **Statutes**

10  Federal Rule of Civil Procedure 23(a)(1) ....................................................... 13

11  Federal Rule of Civil Procedure 23(a)(2) ....................................................... 14

12  Federal Rule of Civil Procedure 23(a)(4) ....................................................... 15

13  Federal Rule of Civil Procedure 23(b)(2) ....................................................... 18

14  **Other Authorities**

15  Manual for Complex Litig. (Fourth) ............................................................... 19

16  **Rules**

17  Fed. R. Civ. P. 23(a)(3) ................................................................................... 14

18  Fed. R. Civ. P. 23(b)(1)(A) ...................................................................... 16, 17

19  Fed. R. Civ. P. 23(c)(2) ................................................................................... 19

20  Fed. R. Civ. P. 23(e)(1)(B) .............................................................................. 19

21  Fed. R. Civ. P. 23(e)(2) ..................................................................................... 8

22

23

24

25

26

27

28

Plaintiffs Jerome M. Skrtich, Joseph F. Peck, and Michael Riccitelli respectfully move for an order preliminarily approving a class action settlement agreement they reached concerning the claims in this case, approving notice to the class, and setting a date for a fairness hearing.[1] Specifically, Plaintiffs ask the Court to: (1) preliminarily approve the proposed Settlement; (2) preliminarily certify the Settlement Class; (3) approve the proposed form and method of notice to the Class; and (4) schedule a hearing at which the Court will consider whether to grant final approval of the Settlement.

I.    **INTRODUCTION**

The proposed Settlement is an excellent result for the Class. The Settlement's present value is $7 million, which is approximately 1/3 of the $21,067,227 in class-wide damages calculated by Plaintiffs' actuarial expert. The Settlement will increase the amount that Class Members receive in their monthly pension checks for the rest of their lives.

The Employee Retirement Income Security Act of 1974 ("ERISA") requires that joint and survivor annuities ("JSA"), a benefit form which provides benefits for the lives of plan participants and their spouse, be "actuarially equivalent" to the single-life annuity ("SLA") offered to the participant. In this case, Plaintiffs alleged that Pinnacle West Capital Corporation ("Defendants")[2] violated ERISA's requirement because the Pinnacle West Capital Corporation Pension Plan (the "Plan") did not provide actuarially equivalent JSAs to retirees. Plaintiffs alleged Defendants are underpaying retirees receiving JSAs.

The proposed Settlement's value must be considered in light of the substantial litigation risks in this complex case. Plaintiffs' legal theory has not been litigated through trial in any case to date. While there are three pending appellate cases involving Plaintiffs' legal theory, *see Drummond v. Southern Container Co.*, No. 24-12773 (11th Cir. Aug. 28, 2024); *Reichert v. Kellog Co.*, 24-1442 (6th Cir. May 17, 2024); and *Watt v. FedEx Co.*, No. 24-5945 (6th Cir. Oct. 17, 2024), there are no appellate decisions directly on point. Few

---

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Parties' Settlement Agreement.

[2] Plaintiffs also brought claims against the Benefit Administration Committee of the Capital West Corporation Retirement Plan.

PLAINTIFFS' PRELIMINARY MOTION
FOR SETTLEMENT APPROVAL
CASE NO. CV-2:22-01753-SMB

cases involving Plaintiffs' legal theory have resulted in a class-wide settlement. Plaintiffs' ability to prevail in this case hinges on which assumptions generate actuarially equivalent benefits for Class members, an issue the Parties' experts vigorously disputed. Accordingly, success at trial would depend on Plaintiffs winning a "battle of experts" in a highly technical field. For these reasons, and others discussed in more detail below, the Settlement satisfies Rule 23's criteria for preliminary approval, and Plaintiffs request that the Court grant this motion.

Other district courts have approved class action settlements involving materially identical claims under very similar terms as the Settlement in this case. In *Berube v. Rockwell Automation, et al,* Case No. 2:20-CV-01783 (E.D. Wis. Mar. 8, 2024) and *Holloway et al. v. Kohler Co. et al*, Case No. 2:23-cv-01242 (E.D. Wis. Dec. 12, 2024), the courts certified settlement classes, approved counsel here as class counsel in those cases, found the settlements to be fair, reasonable, and adequate, and awarded attorneys' fees, reimbursement of expenses and payment of case contribution awards. *Berube* at Dkt. 90 ("*Berube* Order"); *Holloway* at Dkt. 44 (same). Similarly, in *Urlaub et al v. Citgo Petroleum Corp. et al.*, Civil Action No. 21-cv-4133, Dkt. No 175 (N.D. Ill. Jan. 27, 2025) ("*Urlaub* Approval"), the court approved a settlement involving substantially identical claims. *See also McFadden, et al, v. Sprint Communications, LLC*, Case No. 22-2464, Dkt. 46 (D. Kan. Aug. 21, 2024) ("*Sprint* Approval"); *Cruz v. Raytheon*, No. 19-11425, Dkt. 113 (D. Mass. June 11, 2021) (*Cruz* Final Order and Judgment). Plaintiffs seek the same relief here as the courts in *Berube*, *Holloway*, *Urlaub*, *McFadden* and *Cruz* awarded.

## II.   BACKGROUND

Plaintiffs filed an Amended Complaint on December 9, 2022, on behalf of participants and beneficiaries receiving pension benefits in the form of a JSA from the Plan. *See* Dkt. 17. Plaintiffs alleged that ERISA requires that JSAs be at least the "actuarially equivalent" of the SLA the participant could have selected when he or she began receiving benefits. *Id*. ¶¶ 20-23. Two benefit forms are "actuarially equivalent" when they have the

same present value, calculated using the same, reasonable actuarial assumptions. *Id*. at ¶¶ 29-35.

The central actuarial assumptions used to determine actuarial equivalence are mortality and interest rates. A mortality assumption estimates how many benefit payments will be made, based on the ages of the participant and (in the case of JSAs), the beneficiary. *Id*. at ¶ 4. An interest rate assumption discounts the value of expected future payments. *Id*. at ¶ 5. The amount of a JSA benefit is lower than the amount of an SLA benefit to account for the possibility that the beneficiary will receive benefits after the participant's death. *Id*. at ¶ 3. But the two forms of benefits must have the same present value to be actuarially equivalent. *Id*.

Plaintiffs alleged that Defendants calculated their JSA benefits (and the JSAs of other Class Members) using outdated mortality and interest rate assumptions which caused their monthly benefit to be less than an "actuarially equivalent" amount. *Id.* at ¶¶ 61-69. In other words, Plaintiffs allege that the present values of Class Members' JSA benefits were less than the present values of the SLAs they could have selected and that the present values would have been equal had Defendants reasonable assumptions to calculate Class Members' JSAs.

## III.    PROCEDURAL BACKGROUND

On October 13, 2022, Plaintiffs filed this class action. Dkt. 1. On November 1, 2022, the Parties filed a joint motion to extend the time for Defendants to respond to Plaintiffs' complaint, which the Court granted, and on December 9, 2022, Plaintiffs filed their First Amended Complaint. Dkt. 14, 15, 17.

Defendants filed a Motion to Dismiss on December 23, 2022, which sought to dismiss all claims. Dkt. 19. Plaintiffs filed their opposition to the Motion to Dismiss on February 3, 2023, Dkt. 23, and Defendants filed a reply on February 24, 2023. Dkt. 25. The Court held a hearing on the motion on August 3, 2023, Dkt. 28, and on August 7, 2023, the Court denied the motion with respect to Plaintiffs' first claim for violation of 29 U.S.C. §

1055(d)'s actuarial equivalence requirement, but dismissed Plaintiffs' second claim for breach of fiduciary duty. Dkt. 29.

On August 21, 2023, Defendants filed their Answer to Plaintiffs' First Amended Complaint and a partial motion for reconsideration, seeking reconsideration to the extent that the Court denied their Motion to Dismiss. Dkt. 33, 34. On August 22, 2023, the Court Ordered Plaintiffs to file a response to Defendants' motion, which Plaintiffs filed on September 9, 2023. Dkt. 35, 38. The Court denied Defendants' motion for reconsideration on November 16, 2023. Dkt. 41.

While Defendants' motion for reconsideration was pending, the Parties engaged in a Rule 26(f) conference, filing their 26(f) report on August 30, 2023. Dkt. 36. The Court then issued its Case Management order on August 31, 2023. Dkt. 37. Over the next six months, the Parties engaged in substantial discovery, with the Court granting the Parties' request to extend discovery deadlines due to the volume of materials produced. Dkt. 46. Defendants produced, and Plaintiffs reviewed, over 40,000 pages of documents. Declaration of Douglas P. Needham ("Needham Decl.") at ¶ 7. During the discovery process, the Parties had a discovery dispute requiring the Court's intervention and the Court held a discovery conference on June 11, 2024. Dkt. 48, 53.

The Parties then completed fact discovery with depositions: Plaintiffs took 30(b)(6) depositions of Defendants over two deposition days and took depositions of two fact witnesses. Each Plaintiff also sat for a deposition. Needham Decl. at ¶ 7. Thereafter, the Parties proceeded to expert discovery, each serving their expert reports on September 27, 2024 and their expert rebuttal reports on November 13, 2024. Needham Decl. at ¶ 8. Plaintiffs deposed Defendants' expert on December 17, 2024, and Defendants deposed Plaintiffs' expert on December 19, 2024. Needham Decl. at ¶ 8.

Plaintiffs moved for Class Certification on January 17, 2024. Dkt. 62. Defendants filed their opposition to class certification on February 28, 2025, and Plaintiffs filed their reply on April 11, 2025. Dkt. 64, 67. Defendants moved for leave to file a sur-reply in opposition to the motion for class certification on April 21, 2025. Dkt. 68, 69.

After the briefing on class certification was complete, the Parties engaged in mediation before the Hon. Judge Morton Denlow through JAMS on April 22, 2025. Needham Decl. at ¶ 14. The Parties were unable to reach an agreement after their all-day mediation session. *Id*. But at the end of the session, Judge Denlow offered a mediator's proposal, and on April 24, 2025, the Parties both accepted. *Id*. Over the next few days the Parties worked to finalize their settlement term sheet, which was completed on April 30, 2025. On May 1, 2025, the Parties informed the Court of their agreement to settle the case. Dkt. 70.

## IV.    TERMS OF THE PROPOSED SETTLEMENT

The Settlement is attached to the Needham Declaration as Exhibit A, and the material terms are summarized below:

### A.    Class

The Class is a non-opt out class defined as:

> [A]ll participants in and beneficiaries of the Pinnacle West Capital Corporation Retirement Plan (the "Plan") who began receiving a JSA or QPSA after November 1, 2016 through the date of entry of the Preliminary Approval Order.

### B.    Plan Amendment

Within ninety (90) days after of when the Final Approval Order becomes "Final," Defendants will amend the Plan to provide that each Class Member is entitled to an increased monthly benefit in the same form they are receiving as of December 31, 2025. Settlement, §§ 1.43 and 3.2. The Plan Amendment will allocate the Net Settlement Amount, i.e. $7 million minus any amounts the Court awards as attorneys' fees, expenses or case contribution awards, among Class Members in proportion to their alleged losses. Settlement, § 3.3. The Plan Amendment will be effective for payments to Class Members on or after January 1, 2026.  Settlement, § 3.2.

### C.    Calculation of Monthly Benefit Increases

Class Members will receive an increase to their monthly benefits in accordance with the following steps. First, the Claimed Additional Value Amount will be calculated for each

Class Member, measured by the difference in present value between the JSA benefit they received and the present value of the benefit they would have received using the assumptions proposed by Plaintiffs' expert. Settlement, §§ 3.3.1, 3.3.2 and 3.3.3. Interest will be included in the Claimed Additional Value Amount starting from when the Class Member started receiving benefits to account for the fact that Class Members have been receiving the claimed lower benefit amounts for different lengths of time. Settlement, § 3.3.3.

Second, a Settlement Percentage is calculated for each Class Member to measure their loss relative to all other Class Members. Settlement, § 3.3.4. This is done by dividing the Class Member's Claimed Additional Amount by the total Claimed Additional Value Amounts for all Class Members. Third, each Class Member's Settlement Percentage is multiplied by the Net Settlement Amount, the $7 million provided by the Settlement minus any Attorneys' Fees, Litigation Expenses and Case Contribution Awards the Court awards. Settlement, § 3.3.5. In simple terms, this step allocates the Settlement proceeds to each Class Member in an amount proportional to the Class Member's claimed loss.

Fourth, each Class Member's settlement allocation is annuitized, i.e., converted from a single dollar amount into an annuity, in the form of benefit they are currently receiving. Settlement, § 3.3.6. This amount is then added to the current monthly amount that Class Members are receiving.

### D.    Timing of Benefit Increase

The Plan Amendment shall provide that any increase in benefits will begin being paid no later than the first day of the first calendar month that is at least one hundred and twenty (120) days after the Settlement Effective Date (the "Benefit Increase Payment Date"), and shall include a lump sum equal to the sum of such Monthly Benefit Increases due from January 1, 2026, until the Benefit Increase Payment Date. Settlement, § 3.2.

### E.    Calculation of Benefits Upon the Death of a Participant Class Member

Upon the death of a Participant Class Member, the amount of the survivor annuity payable to the Participant Class Members' beneficiary, if any, shall be determined using the

Class Members' Recalculated Benefit Amount in a manner consistent with the terms of the Plan. Where the Participant and spouse have both died, upon filing of an Estate Claim Form, the Estate will receive a lump sum payment. Settlement, §§ 3.3.7, 3.9.

## F.    Release

Upon entry of the Judgment by the Court, Plaintiffs and each Class Member will be deemed to forever release and discharge Defendants and the Related Parties from any and all Claims arising on or before the Settlement Effective Date (1) that were brought, or could have been brought (whether known or unknown, suspected or unsuspected, foreseen or unforeseen), arising out of or relating to the allegations in the Complaint or Amended Complaint, or (2) relating to the actuarial assumptions or factors used by the Plan to calculate benefits (collectively, the "Released Claims"). Settlement, § 4.1.1.

This release is limited to only those claims which could have been brought in this action, and appropriately tailored to the case.

## G.    Notice and Administration

After the entry of the Preliminary Approval Order, Defendants will provide notice to Class Members of the proposed Settlement. Defendants will transmit the Notice by first class mail to the Class Member's address maintained in the records of Pinnacle West or the Plan's Recordkeeper. Settlement, § 2.3. Defendants will mail the Notice to Class Members within forty-five (45) days after entry of the Preliminary Approval Order, or such other date as the Court may set in a Preliminary Approval Order. If a notice is returned as undeliverable, Defendants will use commercially reasonable means to find a current address and re-send the Notice. Settlement, § 2.3.

## V.    ARGUMENT

The Ninth Circuit strongly "favors settlements," particularly for "complex class action litigation." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). Courts must approve class action settlements to protect the rights of absent class members. 4 Newberg and Rubenstein on Class Actions § 13:10 (6th ed.). The first step is preliminary

approval. *Id*. If the Court determines that it will likely be able to grant final approval, it should grant preliminary approval and proceed to a full fairness hearing. *Id*.

## A.    The Settlement Merits Preliminary Approval

### 1.    Standard for Preliminary Approval

Rule 23(e)(2) provides that a court may approve a proposed Settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The parties must show that the proposed settlement is reasonable, with the Court vigilant for even "subtle signs of collusion." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 782-83 (9th Cir. 2022). The determination involves consideration of:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Arrison v. Walmart Inc.*, No. CV-21-00481, 2024 WL 3413968, at *2 (D. Ariz. July 15, 2024) (Brnovich, J.).

"[M]any of these factors cannot be fully assessed until the final fairness hearing." *Id*. "Accordingly, at the preliminary approval stage, courts need only evaluate 'whether the proposed settlement (1) appears to be the product of serious, informed, non-collusive negotiations, (2) has no obvious-deficiency, (3) does not improperly grant preferential treatment to class representatives or segments of the class and (4) falls within the range of possible approval.'" *Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 119 (D. Ariz. 2022).

### 2.    The Proposed Settlement Was the Product of Arm's Length Negotiations

The Parties' central dispute is whether the assumptions used to calculate JSAs generated actuarially equivalent benefits for Class Members. This case is a "battle of the experts." Plaintiffs' expert opines the Plan's assumptions did not generate actuarially

equivalent JSAs; Defendants' expert opines that they did. The Parties rely on the same experts their counsel have used in similar actuarial equivalence cases who have opined about these same actuarial assumptions in the past. As in these prior cases, the Parties' experts were thoroughly deposed about their opinions. Moreover, counsel for the parties have previously litigated numerous similar cases against each other and are fully versed in the strengths and weaknesses of these expert opinions and the strengths and weaknesses of the case generally. Consequently, the parties were fully capable of engaging in, and did engage in, robust arm's length negotiations.

Nonetheless, the Settlement was not easily reached. It came only after an extensive discovery process, including the production and analysis of over 40,000 pages of documents, four depositions of Defendants' fact witnesses, depositions of each of the three Plaintiffs, and depositions of both Parties' expert witnesses. Needham Decl. at ¶ 7-14. The Parties had briefed and argued a motion to dismiss, including a motion for reconsideration, and the Parties had fully briefed a motion for class certification. With the class certification motion pending, the Parties conducted a mediation with Magistrate Judge Morton Denlow (Ret.), who was formerly a Magistrate Judge for the Northern District of Illinois. Needham Decl. at ¶ 12. Since joining JAMs in 2012, Judge Denlow has mediated settlements in complex cases totaling $1.9 billion, including more than 325 class action lawsuits. *Id*. The Settlement is the result of Judge Denlow's "mediator's proposal," which the Parties evaluated and accepted two days after the initial day of mediation. *Id*. at ¶ 14.

The process used to reach the Settlement evidences there was not collusion. Courts generally find that settlements reached with the help of a mediator to be non-collusive. *Salazar v. Driver Provider Phoenix LLC*, No. CV-19-05760, 2024 WL 2923718, at *5 (D. Ariz. June 10, 2024) (Brnovich, J.) ("presence of a neutral mediator weighs in favor of a non-collusive process.") citing *In re Bluetooth Headsets Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011)); *see also Estrada v. iYogi, Inc.*, CIV. NO. 2:13–01989, 2015 WL 5895942 (E.D. Cal. 2015) (preliminarily approving settlement negotiated before Judge Denlow).

### 3.    The Settlement has no "Obvious Deficiencies"

Courts in the Ninth Circuit must evaluate three "subtle signs" of obvious deficiencies that class counsel have pursued their own self-interests, known as "the *Bluetooth* factors: '(1) whe[ther] counsel receives a disproportionate distribution of the settlement; (2) whe[ther] the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) whe[ther] the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *Zwicky*, 343 F.R.D. at 121 (citing *McKinney-Drobnis v. Oreshack*, 16 F.4th 594 (9th Cir. 2021).

The first *Bluetooth* factor is met. The Settlement states that the amount of Attorney's Fees shall be determined by this Court, subject to an upper limit of one third of the value of the settlement. Settlement, § 1.9.[3] In *Smart v. Nat'l Collegiate Athletic Ass'n*, No. 2:22-CV-02125, 2025 WL 1248794, at *8 (E.D. Cal. Apr. 30, 2025), the Court approved preliminary approval of a settlement agreement which similarly provided for fees "not to exceed 33.33% of the gross settlement amount." Such approval is preliminary, and at final approval, Plaintiffs will support their request for fees with sufficient information for the Court to perform a lodestar cross-check. Moreover, the Settlement is not contingent upon approval of the fee request. Settlement, § 2.7.1; *Salazar*, 2024 WL 2923718, at *5 (approving settlement where "fee award will not impact the settlement's finality").

The second *Bluetooth* factor is met. Defendants have not expressly or impliedly agreed not to challenge Plaintiffs' fee request. Decl. at ¶ 29.

The third *Bluetooth* factor is also satisfied. The Settlement does not contain a kicker or reverter clause. If approved, the Settlement will increase Class Members' future monthly benefit payments. Each Class Member is already receiving payments from the Plan. The

---

[3] The Settlement's present value of $7 million provides, for purposes of settlement analysis, a "common fund." This is the appropriate methodology to use in a case that involves payment of annuity benefits. *See, e.g., Berube* Order, ¶ 10; *Herndon v. Huntington Ingalls Industries, et al,* No. 4:19-cv-52 (RCY), Dkts. 133, 137 (E.D. Va. May 10, 2022) (awarding percentage of present value of increased future benefits as attorney fees); *Sprint* Approval at 9 (same); *Cruz* Final Order and Judgment (same).

Settlement will not change how Class Members receive those payments. Each Class Member will receive their increased payments for the remainder of their lives and, for Participant Class Members, for the remainder of the lives of their surviving spouses. None of the Settlement will be returned to Pinnacle. The Settlement is non-reversionary.

### 4.    The Settlement Treats All Class Members Equitably

Courts must evaluate whether a proposed class settlement "improperly grants preferential treatment to class representatives." *Zwicky*, 343 F.R.D. at 123. Here, the amount each Class Member's monthly payments will increase is proportional to the present value of the Class Member's injury, according to the Plaintiffs' theory. Settlement, §§3.1, 3.3, § 3.3.2 (Settlement allocation based on Class Member's claimed loss relative to other Class Members. This formula is applied consistently and, in doing so, treats Class Members equitably relative to each other. *Salazar*, 2024 WL 2923718, at *7.

The Settlement also does not give the Class Representatives preferential treatment. Their benefit increases are calculated in the same manner as all other Class Members, and the actuarial assumptions used to calculate Class Members' injuries (and thus their payment increases) were selected by Plaintiffs' expert without regard to the effect it would have on the benefits of the class representatives.

Further, the Court must approve any Case Contribution Awards paid to the Class Representatives, with the awards capped at $5,000 per representative. Settlement, §§ 1.13 and 2.6. These payments will compensate the class representatives for their time and dedication to this matter, including time searching for documents, evaluating drafts, preparing and sitting for depositions, and otherwise remaining available to Class Counsel to answer any questions. Decl. ¶¶ 7, 30. The total amount requested, which will be less than 0.22% of the Settlement's present value of the Settlement, is reasonable as a percentage. *Zwicky*, 343 F.R.D. at 124 (incentive payments totaling 0.11% and 0.17% of total settlement were reasonable (citing *In re Online DVD-Rental Antitrust Litig.* 779 F.3d 934 (9th Cir. 2015))). This Court found service awards of $20,000 each reasonable at preliminary

approval in *Salazar*. 2024 WL 2923718, at *7. And, as in *Salazar*, the Court may further scrutinize the awards at the final approval stage. *Id*.

**5.     The Relief Obtained is Well Within the Reasonable Range**

"To determine whether a settlement 'falls within the range of possible approval,' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Salazar*, 2024 WL 2923718, at *7 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). Settlements often "only amount to a fraction of the potential recovery." *Id*. (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.1998)).

The key question in this case — whether Class Members' JSA benefits were less than the actuarial equivalent of the SLAs that they could have selected — is one that could only be determined at trial through expert testimony. Accordingly, this case was a "battle of experts," and the results of such battles are notoriously difficult to predict. Moreover, at the time of the settlement, class certification was hotly contested and unresolved, with courts split in similar cases. *Compare Urlaub v. CITGO Petroleum Corp.*, 348 F.R.D. 319, 322 (N.D. Ill. 2024) (certifying class in actuarial equivalence case) with *Adams v. U.S. Bancorp*, No. 22-cv-509, Dkt. 173 (D. Minn. April 4, 2025) (denying certification in actuarial equivalence case).

Particularly in light of the risk that class certification could be denied, the proposed Settlement is an excellent result for the Class. The Settlement's present value is $7 million, which is one-third of the $21 million in class-wide damages calculated by Plaintiffs' actuarial expert. Needham Decl., ¶ 8. This is an outstanding result considering the likelihood of further lengthy, expensive litigation and the risk that the Class would recover less — or possibly nothing at all. This result is comparable to the results in *Berube, Sprint* and *Holloway*, all of which were excellent results compared to other ERISA settlements.

ERISA class settlements involving statutory claims other than actuarial equivalence have been litigated much more frequently (and, thus, have more of a track-record) often settle for lower percentages of Plaintiffs' asserted damages. *See, e.g., Toomey v. Demoulas*

*Super Markets, Inc.*, No. 1:19-cv-11633, Dkt. 95 at 10 (D. Mass. Mar. 24, 2021), *approved* Dkt. 100 (D. Mass. Apr. 7, 2021) (approving settlement that represented approximately 15–20% of alleged losses); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-cv-00563, Dkt. 211 (S.D.N.Y. May 20, 2020), *approved* 2020 WL 6114545, at *1 (S.D.N.Y. Oct. 7, 2020) (approving settlement of 16% of alleged losses); *Velazquez v. Massachusetts Fin. Services Co*., No. 17-11249 Dkt. 108 (D. Mass Dec. 5, 2019) (approving settlement for 29% of maximum damages); *Prince v. Eaton Vance Corp*., No. 18-12098, Dkt. 57 (D. Mass Sept. 24, 2019) (approving settlement for 23% of total damages); *Sims v. BB&T Corp*., No. 15-732, 2019 WL 1993519, *2 (M.D.N.C. May 6, 2019) ($24 million settlement representing 19% of alleged damages); *Urakhchin v. Allianz Asset Mgmt. of Amer., L.P*., No. 15-1614, 2018 WL 8334858, *4 (C.D. Cal. July 30, 2018) ($12 million settlement representing 17.7% of maximum alleged damages); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 2018 WL 2183253, at *6–7 (N.D. Cal. May 11, 2018) (approximately 10% of losses under Plaintiffs' highest model).

In the Ninth Circuit, courts have approved settlements of a much lower percentage of the potential recovery. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (settlement of "roughly one-sixth of the potential recovery" "fair and adequate"); *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (approving settlement providing 10.7% of the potential recovery); *Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, No. 19-CV-06088, 2020 WL 5074392, at *6 (N.D. Cal. Aug. 27, 2020) (approving settlement providing 7% of the potential recovery).

**B.     The Class Should Be Preliminarily Certified for Settlement Purposes**

**1.     Satisfies Rule 23(a)'s Requirements.**

**i.     Numerosity**

A class satisfies the numerosity requirement if members are so numerous that joinder would be impracticable. Fed. R. Civ. P. 23(a)(1). "Generally, forty or more members will satisfy the numerosity requirement." *McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242,

1    249 (D. Ariz. 2022). Here, there are approximately 900 members of the proposed Class.[4]

2    Needham Decl. at ¶ 19. Numerosity is satisfied. *McClure*, 341 F.R.D. at 249.

3               **ii.**      **Commonality**

4          A proposed class satisfies Rule 23(a)(2)'s requirement if "there is at least one

5    question of fact or law common to the class." *McClure*, 341 F.R.D. at 250. "[C]ommonality

6    is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of

7    the putative class members." *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 989 (D.

8    Ariz. 2011) (citing *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)).

9          The lawsuit challenges the Plan-wide formula for calculating JSAs. Plaintiffs allege

10   that the Class Members' JSA benefits are not actuarially equivalent to the SLAs that Class

11   Members were offered. As previously mentioned, the driver of Class Members' harm is the

12   actuarial assumptions used to generate JSA benefits. Accordingly, determining whether the

13   application of those assumptions excessively reduced Class Members' pensions will resolve

14   a central issue in the case. This alone satisfies commonality. *McClure*, 341 F.R.D. at 250

15   (finding commonality satisfied because "each claim is based on a form contract and a

16   uniform course of conduct towards each [class member].").

17         Here, the Settlement resolves the Plaintiffs' and Class Members' common claims by

18   accepting a portion of the alleged damages in exchange for a release of the common claims.

19   Though amount of Class Members' recoveries are not uniform, each will recover the same

20   portion of their alleged damages. Settlement, § 3.3.5. Commonality is satisfied. *Saliba v.*

21   *KS Statebank Corp.*, No. CV-20-00503, 2021 WL 2105608, at *3 (D. Ariz. May 25, 2021)

22   (granting preliminary approval, finding commonality satisfied when the settlement resolved

23   "the common questions Plaintiff contends underlie his claims.").

24              **iii.**     **Typicality**

25         Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be]

26   typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "As long as the

27

28      [4] The size of the proposed class is likely to increase, as Plan participants continue to retire and choose JSA benefits.

representative's claims are reasonably coextensive with those of absent class members, they need not be substantially identical." *McClure*, 341 F.R.D. at 250.

Here, the Plaintiffs' claims are typical of those of the Class. They stem from the Plan's formula used to calculate JSAs, which Plaintiffs allege generate lower benefits than reasonable actuarial assumptions. The claims arising from these core facts are based on the same legal theory: that Defendants violated ERISA's actuarial equivalence requirement in 29 U.S.C. § 1055(d). *Urlaub*, 348 F.R.D. at 325-26 (typicality satisfied where plaintiffs alleged their JSAs were not actuarially equivalent to the SLAs they were offered); *McAlister R&R*, 2023 WL 3620884, at *8 (same).

Moreover, "[t]he class-wide settlement renders Plaintiff's claims typical of the Settlement Class because it uniformly and fairly resolves claims concerning the same set of alleged practices, legal theories, and alleged harms. Rule 23(a)(3) is therefore satisfied." *Saliba*, 2021 WL 2105608, at *3. As discussed previously, each Class Member's claims will be resolved by a uniform Plan amendment. Rule 23(a)(3)'s typicality requirement is satisfied.

### iv.    Adequacy

Rule 23(a)(4)'s adequacy requirement asks "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Bryant v. Arizona Pipe Trades Pension Trust Fund*, No. CV-13-1563, 2015 WL 300385, at *7 (D. Ariz. Jan. 22, 2015). "This inquiry has a tendency to overlap with the commonality and typicality criteria of Rule 23(a)." *Id*. The named Plaintiffs and their proposed counsel satisfy these criteria.

Here, Plaintiffs do not have any conflicts of interest with other Class members. As discussed with respect to commonality and typicality, Plaintiffs' claims rise and fall on the same facts and legal theories as those of all Class Members. Moreover, under the terms of the proposed settlement, the Plaintiffs' claims will be resolved in the same manner as other Class Members' claims – by receiving an identical portion of their alleged damages.

Plaintiffs actively and vigorously prosecuted this action on behalf of the Class. Needham Decl. ¶ 7. Among other things, Plaintiffs produced relevant documents and provided material information to counsel; reviewed filings including the Complaint before this case was filed; gathered documents in response to Defendants' document requests; gave deposition testimony; understand their roles as class representatives; and reviewed and accepted the terms of the Settlement. *Id*. at ¶ 30.

Plaintiffs propose to have Motley Rice, LLC ("Motley Rice") and Izard Kindall & Raabe, LLP ("IKR") serve as Class Counsel, and Keller Rohrback L.L.P. serve as local counsel. These firms have prosecuted the case to date, consulting with Plaintiffs and experts; investigated the claims; drafted a detailed complaint; successfully opposed a motion to dismiss; conducted discovery; negotiated litigation issues with opposing counsel; prepared a motion for class certification, and negotiated this settlement. *Id*. ¶¶ 31.

Proposed Class Counsel are well-qualified to represent the Class. Motley Rice and IKR have been class counsel in dozens of ERISA class actions around the country, including several other lawsuits challenging benefit calculations. Needham Decl. at Exs. B (Motley Rice Resume) and C (IKR Resume). Keller Rohrback L.L.P. has been recognized in this district as "highly experienced class action counsel." *In re Arizona Theranos, Inc., Litig.*, No. 2:16-CV-2138, 2020 WL 5435299, at *11 (D. Ariz. Mar. 6, 2020).

Proposed Class Counsel also have no conflicts with the proposed Class. Needham Decl. ¶ 31. The proposed class satisfies Rule 23(a).

**2.      The Class Satisfies the Requirements of Rule 23(b)(1) and (b)(2).**

A class that meets Rule 23(a)'s requirements may be certified if it satisfies one of Rule 23(b)'s requirements. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Here, the Settlement proposes that the Class should be certified under either Rule 23(b)(1) and/or (b)(2). Settlement, § 1.44. Certification of the class is appropriate under both subsections.

**i.      Rule 23(b)(1)**

Rule 23(b)(1)(A) is satisfied where "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications

with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). The rule is designed for cases "where the party is obliged by law to treat the members of the class alike . . . or where the party must treat all alike as a matter of practical necessity." *Amchem*, 521 U.S. at 614 (citation omitted). "Most ERISA class action cases are certified under Rule 23(b)(1)." *Coppel v. SeaWorld Parks & Ent., Inc.*, 347 F.R.D. 338, 367 (S.D. Cal. 2024) (citation omitted). Certification under Rule 23(b)(1) is appropriate in ERISA cases "because ERISA requires plan administrators to treat all similarly situated participants in a consistent manner." *Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz. 2008). This is true here. If the Court were not to certify a class, hundreds of class members would be left to raise separate claims and Defendants would face "a risk of 'inconsistent or varying adjudications'"—including "contradictory rulings" about how to determine if Class Members received actuarially equivalent benefits.

Like in this case, the plaintiffs in *McAlister* alleged that MetLife's pension plan failed to provide actuarially equivalent JSA benefits. *McAlister v. Metro. Life Ins. Co.*, No. 18-CV-11229, 2023 WL 5769491, at *1 (S.D.N.Y. Sept. 7, 2023). The court concluded that class certification was appropriate under Rule 23(b)(1) because "the validity of the assumptions Defendants used in calculating the benefits offered under the Plan – as well as whether another set of assumptions is proper – are issues that apply to the class as a whole." *Id*. at *8. The court further explained that certification under Rule 23(b)(1) was appropriate because, if "two courts came to different conclusions as to how the proposed class members' [Plan] benefits must be calculated, Defendants would face a conflict between treating Plan participants alike and complying with each separate court order." *Id*. (citation omitted).

The *Urlaub* plaintiffs similarly alleged that the defendants failed to pay actuarially equivalent JSA benefits. *Urlaub*, 348 F.R.D. 319. The *Urlaub* court adopted the reasoning of *McAlister* and likewise certified the Class pursuant to Rule 23(b)(1). *Id*. at *6. Like in *Urlaub* and *McAlister*, Defendants are "entitled to consistent rulings regarding operation of

1   the plan, and have a statutory obligation, as well as a fiduciary responsibility, to treat the

2   members of the class alike." *Id.*

3        The proposed relief is likewise appropriate under Rule 23(b)(1) because it treats all

4   Class Members alike. It resolves all Class Members' claims in a uniform way, for a uniform

5   percentage of the alleged damages and with a uniform release to the Defendants.

6              **ii.     Rule 23(b)(2)**

7        Certification is proper under Rule 23(b)(2) when "a single injunction or declaratory

8   judgment would provide relief to each member of the class." *Foster v. Adams & Assocs.,*

9   *Inc.*, No. 18-CV-02723-JSC, 2019 WL 4305538, at *3 (N.D. Cal. Sept. 11, 2019) *Foster*,

10  2019 WL 4305538, at *3. Rule 23(b)(2)'s requirements are "unquestionably satisfied when

11  members of a putative class seek uniform or declaratory relief from policies or practices

12  that are generally applicable to the class as a whole." *Id.* (citing *Parsons v. Ryan*, 754 F.3d

13  657, 688 (9th Cir. 2014)).

14       Here, certification is warranted under Rule 23(b)(2) because Defendants use the

15  same actuarial assumptions to calculate each Class Member's JSA benefit and Settlement

16  resolves each Class Member's claim in a uniform manner. The injunctive relief the

17  Settlement provides, which requires Defendants to recalculate Class Members' benefits, is

18  consistent Rule 23(b)(2). *Alday*, 619 F. Supp. 2d at 736 (certifying class under Rule 23(b)(2)

19  where "Defendant acted or refused to act on grounds applicable to the class, making final

20  injunctive relief or corresponding declaratory relief appropriate with respect to the class as

21  a whole"); *Foster*, , 2019 WL 4305538, at *8 (certifying class in ERISA case under Rule

22  23(b)(2) "Plaintiffs seek the same relief for all members of the class"); *Bryant*, 2015 WL

23  300385, * 9 (certifying class under (b)(2) in an ERISA case because the "primary remedy

24  sought" was declaratory relief).

25       **C.     The Proposed Notice to Class Members is Adequate**

26       Class Members are entitled to notice of any proposed settlement and an opportunity

27  to object before it is finally approved by the Court. *See* Manual for Complex Litig. (Fourth),

28

§ 21.31. The Court should "direct notice in a reasonable manner to all class members who would be bound by the proposal. Fed. R. Civ. P. 23(e)(1)(B)).

Here the proposed method of notification is adequate. The proposed Notice, attached as Exhibit A to the Settlement, is clear and straightforward, providing Class Members with enough information to evaluate whether to object to the Settlement, as well as directions to the Settlement Website which will include further information. Notice, § IV. Notice will be provided by First Class Mail to the address Pinnacle West or its record keeper maintains for Plan related communications. Settlement, § 2.3. Class Members will not be required to submit a claim form or take any steps to receive the benefit of the Settlement. The Class Notice will also be posted to the Settlement Website. This proposed method of providing notice is adequate under Rule 23(c)(2). *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985) (holding that individual mailed notice which clearly describes the case and Class Members' rights meets due process requirements); *Berube* Order, ¶ 9.

## VI.    PROPOSED SCHEDULE

Should this Court grant preliminary approval to the Settlement, the parties respectfully propose the following schedule for sending notice to the Settlement Class and scheduling a final approval hearing:

| EVENT | SCHEDULED DATE |
|---|---|
| Deadline for mailing Notice to Class members. | 45 days after entry of Preliminary Approval Order, or such other date as the Court may set in a Preliminary Approval Order |
| Motion(s) for, and memoranda in support of (i) Final Approval of Settlement and (ii) Attorneys' Fees and Costs | 30 days before the final approval hearing; hearing to be set by the court. |
| Last day for objections to the Settlement to be filed with the Court and sent to counsel | 28 days before date set by Court for Final Approval Hearing |

| Final Approval Hearing | At the convenience of the Court, not less than 120 days after entry of Preliminary Approval Order |
|---|---|

## VII.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully move that the Court provisionally certify the proposed Class for purposes of settlement pursuant to Rule 23(b)(1) and/or (b)(2), appoint plaintiffs as class representatives, appoint Motley Rice and IKR as Class Counsel and Keller Rohrback L.L.P. as local counsel pursuant to Rule 23(g), preliminarily approve the proposed Settlement, and approve the contents and method of distribution of the proposed Notice.

Dated: July 15, 2025

Respectfully submitted,

/s/ M. Zane Johnson

**MOTLEY RICE LLC**
Douglas P. Needham (pro hac vice)
M. Zane Johnson (pro hac vice)
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
860-218-2720
dneedham@motleyrice.com
zjohnson@motleyrice.com

**IZARD, KINDALL & RAABE LLP**
Robert A. Izard (pro hac vice)
Christopher M. Barrett (pro hac vice)
29 South Main Street, Suite 305
West Hartford, CT 06107
(860) 493-6292
rizard@ikrlaw.com
cbarrett@ikrlaw.com

**KELLER ROHRBACK L.L.P.**
Ron Kilgard, Bar No. 005902
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822
rkilgard@kellerrohrback.com

*Attorneys for Plaintiffs*